Booth, Judge,
delivered the opinion of the court:
The Navy Department, in the public sale of certain surplus war materials, catalogued the material to be sold, and upon this bids were solicited. Among other lots was lot No. 28, specified as “ dross metal and skimmings, red brass, class NF 21, quantity 201,000 pounds (more or less), located at navy yard, Washington, D. C.” It is conceded that “dross metal and skimmings, red brass,” means the skimmings which follow the smelting of red brass in a smelting furnace. The value of the red brass refuse is in the ability to reclaim from it the metal it contains. The catalogue contained the usual governmental terms of sale; the material was to be sold “ as and if is,” opportunity for inspection was to be afforded, and no warranty obtained. The plaintiff made an inspection of the mound of material, and from it obtained samples which were in t'urn submitted by him to the Pittsburgh Testing Laboratory. The test disclosed a copper content of 88.58%. The plaintiff on the day of sale bid on the material, offering therefor $0,813 per pound, and accompanied his bid with a deposit of 10% of the same, i. e., $1,634.13. The sales officer announced on the day of sale that plaintiff’s bid was the highest received. Immediately after this announcement *368 plaintiff again inspected, the material and discovered a radical change in conditions from those of his first inspection. He observed a large quantity of dirt, slag, zinc, bronze, aluminum, and yellow brass, as well as some red brass mixed in the make-up of the mound. Obviously this condition of affairs did not correspond to plaintiff’s conception of what he intended to purchase, and he thereupon reported the fact to the officer in charge of the sales and requested a concellation of his contract, protesting against existing conditions. The officer in charge granted the request but declined to return to plaintiff the $1,634.13 he had deposited at the time he submitted his bid. It is for this amount the plaintiff sues.
The defendant treats the case as one of consummated contract, with the right of forfeiture under the agreement. The antithesis of the advanced proposition impresses the court. Section 14 of the terms of sale reserved to the defendant the right to reject any or all bids and the privilege of withdrawing whole lots from the sale, as well as waiving defects in bids offered. Careful stipulations abound throughout the entire recital of terms of sale advantageous to the Government, indicating a clear intent to reserve the question of a binding contract of sale until the award is made. “Award ” is the term employed, clearly indicating that something more than the mere offer and announcement of the highest bidder were necessary to make the contract a binding obligation. If the defendant accepted the offer and the minds of the parties met, the contract would have been complete, but in this instance the defendant had not accepted and did not unqualifiedly accept the offer; on the contrary, between the announcement of the plaintiff’s bid and the closing of the transaction the defendant, confronted by an allegation of changed conditions, acknowledged the same and sought to accept not an unqualified contract of sale but undertook to impose upon the plaintiff a condition for according him an alleged release from the existing difficulties of the situation. We say this advisedly because the record discloses that no effort was made to collect payment for the material alleged to have been sold, no notice was given to plaintiff to pay or remove the material from the premises, no word *369 that the plaintiff was in default under his contract, nothing-done except to hold fast to the material and the plaintiff’s deposit. The Government’s officer had notified the plaintiff in writing of awards as to two other distinct lots of material purchased by the plaintiff, but omitted any reference to lot No. 28. What the officer did was to say to the plaintiff, “ We do not intend to hold you for the full purchase price of the material sold, and in consideration for this concession will forfeit your deposit.” The officer’s motives are not t!o be questioned; he was acting as he thought the law required him to act, not as he personally would have preferred to act.
The forfeiture provisions of the terms of sale are found in paragraphs 6 and 1 of the published catalogue. A deposit of 10% of the amount of the bid must accompany the same. Unsuccessful bidders were to receive a return of their deposits; but the deposit of the successful bidder was to be retained as security for his performance of the contract, and if he did not pay the balance of the purchase price within 10 days and remove the material within 30 days from date of sale the deposit was to be forfeited to the United States as liquidated damages and the bidder would lose all right and interest in the property. Forfeitures are not favored in the law. There is no evidence of any pecuniary loss to the United States, and obviously, from the record in this case the conditions of the terms of sale which were to work a forfeiture were not observed by the Government. On the contrary, the record book shows that on June 8, 1923, the officer in charge of the sale, on the very day of sale, without waiting longer, made this notation, “Forfeit 10% dep.,” and then on June 12, 1923, advised the plaintiff by letter “that in accordance with your verbal request, the award of lot No. 28 (totaling $16,341.30) has been canceled.” Note the language “ has been eaneeledP It would be most unusual to sustain a forfeiture under a contract which prior to the time of the performance of the conditions which work the same had been “ canceled.”
It is impossible to read the record in this case and arrive at a conclusion that the contract of sale was completed. To attain such a conclusion entails the necessity of disregarding *370 the customary and usual practice of the Government' in sales conducted as this one was conducted. To at once assume the right of forfeiting his advance deposit without waiting for a default upon the part of a purchaser, despite what may have been said, is indicative of an intent to treat as breached a contract which the officer later admits was canceled days before it was possible to make default. The sales officer was clothed with authority t'o accept or reject the plaintiff’s bid. If accepted, the transaction from this angle of approach was closed; if rejected, a similar condition obtained. That he did not regard the plaintiff as obligated under the bid is manifest from his negotiations with the plaintiff respecting the sale after the bids were opened, and what he did is not unusual in Government sales of surplus material.
No proof, as previously observed, is in the record that the Government suffered any loss because of plaintiff’s position; whether the material was subsequently sold for more or less than plaintiff’s bid does not appear, and we believe the plaintiff is entitled to a judgment. Judgment will be awarded the plaintiff for $1,634.13. It is so ordered.
Moss, Judge; Geaham, Judge; Hat, Judge; and Campbell, Chief Justice, concur.