YOUNG ASSOCIATES, INC.
v.
The UNITED STATES.
No. 787-71.

United States Court of Claims.
Jan. 18, 1973.

John F. Myers, Washington, D. C., attorney of record, for plaintiff.

Leslie H. Wiesenfelder, with whom was Asst. Atty. Gen., Harlington Wood, Jr., Washington, D. C., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge:

Plaintiff Young Associates, Inc., contracted in June 1964 with the National Park Service of the Department of the Interior to do some construction work, including lighting and tile-lining, in a new road tunnel built in Rock Creek Park in Washington, near the National Zoological Park. The work was accepted as completed in November 1965, but the Government thereafter assessed liquidated damages at $100 per day for 144 days of unexcusable delay in completion, a total of $14,400. This sum was deducted from the amount due the contractor.

Young Associates appealed the imposition of liquidated damages to the Department of the Interior Board of Contract Appeals, which affirmed the contracting officer's determination. IBCA No. 557–4–66, 67–2 BCA ¶ 6676; 69–1 BCA ¶ 7419 (Dec.1968). This action to review the administrative holding raises purely legal issues; the facts are not now disputed[1] and both sides have moved for summary judgment.

■ Plaintiff's major challenge is that the board erred in ruling that the contract should be construed as containing a liquidated-damages provision (under which the contracting officer thought he was acting). It is agreed that liquidated damages could not be imposed unless authorized by the contract, and it is also common ground that a liquidated-damage provision was not mandatory for this type of contract but was optional at the election of the contracting officer. The basic question is whether such a requirement became part of this undertaking.

The default-termination clause of the contract (article 5 of the 1961 edition of Standard Form 23–A) provides that the Government can terminate the contractor's right to proceed if he delays in performance, and also that "[w]hether or not the Contractor's right to proceed with the work is terminated, he and his sureties shall be liable for any damages to the Government resulting from his refusal or failure to complete the work within the specified time." This standard-form article then goes on to say:

(b) If fixed and agreed liquidated damages are provided in the contract and if the Government so terminates the Contractor's right to proceed, the resulting damage will consist of such liquidated damages until such reasonable time as may be required for final completion of the work, together with

any increased costs occasioned the Government in completing the work.

(c) If fixed and agreed liquidated damages are provided in the contract and if the Government does not so terminate the Contractor's right to proceed, the resulting damage will consist of such liquidated damages until the work is completed or accepted.

Invoking subparagraph (c), defendant points to section 8.8 of Standard Specification FP–61[2] (FP–61 was expressly incorporated as a whole and without limitation into the contract):

FAILURE TO COMPLETE WORK WITHIN CONTRACT TIME. Pursuant to the general provisions of the contract providing for liquidated damages for each calendar day of delay until the work is conmpleted, the total amount of liquidated damages shall be as calculated from the daily charge given in table 8–1.

In turn, table 8–1 sets forth a graduated scale of "daily charge[s] for liquidated damages for each calendar day of delay", rising from $30 to $300, depending on the original contract amount. For an agreement of the initial size of plaintiff's ($312,712.40), the charge was $100 a day. This, says defendant, squarely authorizes the assessment made here.

Plaintiff's point is that this chain-of-contract-authority which the Government threads from article 5(c) to section 8.8 to table 8–1 falls apart when examined closely. Article 5(c), it is argued, does not itself authorize liquidated damages but is phrased hypothetically—"[*i*]*f* fixed and agreed liquidated damages are provided in the contract" (emphasis added). The next step in the challenge is that section 8.8 of FP–61 cannot be the contract provision providing for liquidated damages to which article 5(c) refers because, when 8.8 says "pursuant to the general provisions of

---

1. In particular, there is no claim before the court that the unexcused delay was less than 144 days.

2. "The Standard Specifications for Construction of Roads and Bridges in Federal Highway Projects," promulgated by the Commerce Department in 1961.

the contract providing for liquidated damages", it must be referring to some *other* part of the agreement, not to itself —and there is no other such provision. The last link in the contractor's reasoning is that table 8.1 is merely a bare schedule, not at all a provision itself imposing damages or authorizing them to be assessed. The conclusion, according to plaintiff, must be that this contract, as written and signed, did not comtemplate or authorize any award of liquidated damages to the Government.

This is far from a frivolous argument. In tying the standard construction form with FP–61, the contracting officer failed to bind up the loose ends of language. On one reading, article 5(c) seems to refer to something in FP–61, and then FP–61 appears to hark back to the standard form—in a sort of contractual renvoi. It would have been much better practice to insert a clause affirmatively and unequivocally declaring that liquidated damages would be imposed for unexcused delay.[3]

Nonetheless we are not persuaded to accept the contractor's argument. Though they are not as clear as they should have been, the terms of this contract can be reasonably understood as granting authority for the assessment of liquidated damages. As the board observed, article 5(c) does not say, "If a clause directing that liquidated damages shall be imposed is provided in the contract", but merely, "If fixed and agreed liquidated damages are provided in the contract." Literally, section 8.8 and table 8–1 of FP–61 do in fact "provide" such "fixed and agreed liquidated damages", and accordingly the single stated condition to the operability of article 5(c) is precisely fulfilled. The latter provision being thus triggered, under its terms "the resulting damage [from the contractor's delay] will consist of such liquidated damages until the work is completed or accepted." This reading is certainly rational, fitting as it does with the literal language of article 5(c) and the presence in the contract of both section 8.8 and table 8–1.

If the contractor had shown that from the beginning it understood the agreement otherwise—not to provide at all for liquidated damages—we might well have upheld its position on the ground that such a reading, opposite to the Government's, would likewise be reasonable, and that the risk of the ambiguity should lie with the drafter. But the record is quite to the contrary. During performance and before this controversy arose, plaintiff clearly and affirmatively indicated that it considered the contract to authorize the imposition of liquidated damages. In a letter of February 5, 1965, reserving its right to claim an additional extension of time, Young Associates wrote: "In view of the liquidated damages clause of our contract, it is necessary that our reservation be made." Another letter on October 14, 1965, is to the same effect: "In view of the liquidated damage clause on [sic] this contract and because the delivery of this material is beyond the control of this contractor, we request an extension of the contract time of sufficient length of time to set this coping after the delivery." There is nothing to suggest that plaintiff ever held a different view at any time before the defendant revealed that it would impose the liquidated damages now at issue. We must take it, then, that until that moment both parties understood the contract to authorize a grant of such damages. Unlike those cases in which we have applied the ambiguity principle in the contractor's favor, this contractor did not actually rely during performance on the construction it now advances as reasonable. *Cf.* Astro-Space Laboratories, Inc. v. United States, 470 F.2d 1003,

---

3. Plaintiff gives as an example this provision of a District of Columbia Government form contract:

"Liquidated damages will be imposed for each calendar day or major portion thereof that any work shall remain uncompleted after time specified for completion and in the amount as set forth in the table below."

200 Ct.Cl. ——, —— (1972); WPC Enterprises, Inc. v. United States, 323 F.2d 874, 876, 163 Ct.Cl. 1, 6 (1963).

This being so, we have no choice but to reject plaintiff's argument. The parties' joint intent is, of course, dominant if it can be gathered (J. W. Bateson Co. v. United States, 196 Ct.Cl. 531, 542, 450 F.2d 896, 902 (1971)), and here we have very strong evidence that during performance both sides concurred that the contract incorporated a liquidated-damages clause. See S. S. Silberblatt, Inc. v. United States, 433 F.2d 1314, 1318, 193 Ct.Cl. 269, 278 (1970); Max Drill, Inc. v. United States, 427 F.2d 1233, 1240, 192 Ct.Cl. 608, 620 (1970). Nor is it impossible to attach that common intent to the cloudy English of the contract. Though the language by itself is needlessly equivocal, the interpretation made and shared by the parties is reasonable and in literal harmony with the wording. That joint reading may not be the only permissible one, but it is certainly an acceptable meaning.

Plaintiff's secondary contention is that, in any event, this liquidated-damages clause is unenforceable as a penalty.[4] The instructions for making that test have been set down by the Supreme Court (Priebe & Sons, Inc. v. United States, 332 U.S. 407, 411–412, 68 S.Ct. 123, 126, 92 L.Ed. 32 (1947)): "When they [liquidated-damages provisions] are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced. * * * They serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts. * * * And the fact that the damages suffered are shown to be less than the damages contracted for is not fatal. These provisions are to be judged as of the time of making the contract. * * * We have no doubt of the validity of the provision for 'liquidated damages' when applied under those circumstances [i. e. "failure to get prompt performance when delivery was due"]." See Southwest Eng'r Co. v. United States, 341 F.2d 998, 1001–1003 (C.A.8), cert. denied, 382 U.S. 819, 86 S.Ct. 45, 15 L.Ed.2d 66 (1965).

Plaintiff gives us nothing to show that these principles require the clause to be set aside in this instance. The Government's damages stemming from delayed receipt of the supplies or construction it ordered are normally hard to measure, and it is usually reasonable to establish some fixed monetary substitute for calculation by trial. As the Department of Agriculture Board of Contract Appeals recently put it in Ford Constr. Co., AGBCA No. 241, 72–1 BCA ¶ 9275 at 42,980, liquidated-damages clauses in favor of the Government in road construction cases are ordinarily "intended to cover additional administrative and engineering expenses incurred by the Government when performance of the contract extended over a greater time than was originally contemplated, the loss to the Government of the use of the completed road, and the inconvenience to the general public in not having the road open on schedule." These are all factors which can properly be considered, and which are also likely to be difficult to gauge with any precision.

Citing the liquidated damages policy section of the Federal Procurement Regulations, 41 CFR § 1–1.315–2(c) (1972),[5] plaintiff says that the in-

4. We by-pass, without deciding, defendant's point that plaintiff may not challenge the validity and enforceability of the liquidated-damages provisions for the first time in this court. (Plaintiff did not present this issue to the board.) It is not clear to what extent the boards of contract appeals are empowered to hold contract clauses invalid, and since we need not reach that somewhat difficult issue we let it rest where it is.

5. "The rate of liquidated damages stipulated must be reasonable in relation to anticipated damages, considered on a case-by-case basis, since liquidated damages fixed without any reasonable reference to probable damages may be held to be not

corporation of FP–61 (promulgated in 1961 by the Commerce Department) into this Interior Department 1964 contract shows that no "case-by-case" consideration was given to the rate of liquidated damages. The answer is, we think, that the regulation does not require a liquidated-damage schedule to be tailor-made for each individual contract. It is enough if the amount stipulated is reasonable for the particular agreement at the time it is made. We have no reason to doubt that that was so here, and plaintiff suggests none. The court can take judicial notice that costs did not generally decrease from 1961 to 1964, and the defendant points out that other procuring agencies were using the same charge of $100 per day for a contract of this magnitude. We cannot say, therefore, that in June 1964 it was unreasonable to adopt that amount as daily liquidated damages for delay on this road-building project.

The plaintiff is not entitled to recover. Its motion for summary judgment is denied, the defendant's motion is granted, and the petition is dismissed.

COWEN, Chief Judge (dissenting):

Because I believe that the subject contract cannot reasonably be construed as containing a liquidated damages provision, I an unable to agree with the decision of the court.

No statute or regulation imposed a liquidated damages provision on the plaintiff's contract. Rather the applicable provision of the Federal Procurement Regulations, 41 C.F.R. § 1–1.315 (1964), left it to the discretion of the contracting officer whether a liquidated damages provision would be made a part of any contract of the type here involved. It would appear obvious that in order for the contracting officer to exercise that discretion, it would be necessary for him to include in the particular contract affirmative language informing the contractor that under given conditions, e. g., unexcused failure to perform his contractual responsibilities in a timely manner, he would become liable for liquidated damages in the amounts provided in Table 8.1 of FP–61 ("The Standard Specifications for Construction of Roads and Bridges in Federal Highway Projects.")[1] The contractual provisions relied on by the defendant and the majority as reasonably comprising a liquidated damages clause do not satisfy that requirement for affirmative contractual language indicating the positive exercise of the contracting officer's discretion with respect to liquidated damages. Article 5(c) of the general provisions (part of Standard Form 23–A, 1961 ed.) and clause 8.8 of FP–61 are standard clauses likely to be found in every contract of this kind. Both clauses are hypothetically worded. Article 5(c) begins: "If fixed and agreed liquidated damages are provided in the contract * * *"; paragraph 8.8 commences: "Pursuant to the general provisions of the contract providing for liquidated damages * * *".[2] Each of the cited provisions clearly informs the reader that he should look for another affirmative provision of the contract specifically subjecting the particular contractor to liquidated damages for his unexcused failure to perform on time. No such provision can be found in the subject contract. It is not reasonable to suggest that Article 5(c) and clause 8.8 become less hypothetical by being read together. It is likewise un-

---

compensation for anticipated damages caused by delay, but a penalty and therefore unenforceable" (emphasis added).

1. Plaintiff cites illustrative language taken from a District of Columbia standard form construction contract:
   "Liquidated damages will be imposed for each calendar day or major fraction thereof that any work shall remain uncompleted after the time specified for completion, and in the amount as set forth in the table below. * * *"

2. Table 8.1 of FP–61 adds nothing; it merely states the daily amounts of liquidated damages to be charged, if applicable.

reasonable to argue that the contracting officer may exercise his discretion to make liquidated damages applicable to a given contract merely by including the above-cited standard form clauses.[3] The regulation directs the contracting officer to consider several factors in deciding whether to impose a liquidated damages provision in a contract and thus envisions affirmative action on his part. 41 C.F.R. § 1–1.315–2 (1964).

It is perhaps significant that in 1968 (well after the instant dispute arose) the Federal Procurement Regulations were amended[4] by the addition of, among others, the following new provision:

§ 1–18.110 Liquidated damages.

(a) A liquidated damages clause may, in the discretion of the contracting officer, be included in construction contracts. See § 1–1.315. Where such a provision is used, the invitation for bids or request for proposals shall include a clause reading substantially as follows:

### Liquidated Damages

In case of failure on the part of the Contractor to complete the work within the time fixed in the contract or any extensions thereof, the Contractor shall pay to the Government as fixed, agreed and liquidated damages, pursuant to the clause of this contract entitled "Termination for Default-Damages for Delay-Time Extensions", the sum of $—— for each calendar day of delay.

One probable reason for the amendment was a recognition on the part of contracting officials that specific, positive language is required in contracts like the one before us to render applicable the hypothetical standard form provisions pertaining to liquidated damages.

For the reasons stated above, I do not think the subject contract can reasonably be construed as containing a liquidated damages clause. The contract is simply devoid of sufficient declaratory language to constitute such a provision.

That being so, I cannot accord the dispositive effect which the majority gives to the letters submitted by the plaintiff to defendant during performance (before the dispute arose). The letters indicate that the plaintiff believed that the contract contained a liquidated damages clause. If the contract was arguably ambiguous on this point and could reasonably be read as either including or omitting a liquidated damages provision, it would be relevant to look to such extrinsic evidence to determine whether, before the dispute arose, the parties concurred, by words or actions, in a common interpretation of the later-disputed provision.[5] It is my view, however, that there is no ambiguity in this contract; there clearly was no liquidated damages provision. This court may, of course, reform a contract to conform to the true intent of the parties based on persuasive evidence that their intention was at variance with the written contract. I do not consider plaintiff's letters to represent the kind of thoughtful assertions that would normally be necessary to justify such reformation. Jansen v. United States, 344 F.2d 363, 368–369, 170 Ct.Cl. 346, 353–355 (1965). It may be that the plaintiff here relied on assertions of the contracting officer that the contract contained a liquidated damages provision, or that the plaintiff, unaided by legal advice, misconstrued the complex standard form paragraphs. As to that, we can only speculate. I do not, how-

---

3. This is particularly true considering that FP–61 is a voluminous document providing standard specifications for a wide variety of federal highway projects, most of which are not applicable to plaintiff's relatively limited tunnel-work project.

4. 33 Fed.Reg. 14288, 14289 (1968).

5. *E. g.*, Max Drill, Inc. v. United States, 427 F.2d 1233, 1240, 192 Ct.Cl. 608, 620 (1970) and other cases cited by the majority.

ever, find the cited letters of sufficient probative force to conclude that the parties intended from the beginning to include a liquidated damages provision in a contract when its written terms do not reflect that intention.

A liquidated damages provision is necessarily a harsh contractual remedy, because it permits the Government to recover specified amounts upon an unexcused delay by the contractor without assuming the burden of establishing the actual amount of its loss, if any. Certainly the parties to a Government contract may agree, by appropriate language, to make such a provision a part of their bargain. The court should be reluctant, however, to imply such a clause in a contract when there is a lack of affirmative language to constitute a liquidated damages provision. Since I am persuaded that neither the contractual language nor the actions of the plaintiff during performance are sufficient to justify reading a liquidated damages clause into the subject contract, or to estop plaintiff from challenging the assessment of liquidated damages, I decline to join in the opinion of the court.

All this does not mean that the defendant is without a remedy. Plaintiff no longer contends that the delays complained of were excusable. The Government should be entitled to establish, in further proceedings, the actual damages, if any, resulting from plaintiff's delay of 144 days in completing performance of the contract. Therefore, I would grant plaintiff's motion for summary judgment on the liquidated damages issue and hold that plaintiff is entitled to remission of the liquidated damages assessed ($14,400), subject to the right of the Government to set off against that sum the amount of actual damages sustained by the Government as established by it in further proceedings before our trial commissioner.

KUNZIG, Judge, joins in the foregoing dissenting opinion.