This case is before the court on plaintiffs motion for summary judgment and on defendant’s cross motion for summary judgment. After careful consideration of the *561 parties’ submissions and without oral argument, we allow the defendant’s motion and deny the plaintiffs motion.
Skip Kirchdorfer, Inc., the plaintiff, entered into a contract with the federal government in 1977 to replace the roofs on 19 warehouse buildings in Fort Campbell, Kentucky. Part of the roofing procedure involved laying felt on the roof before the shingles were placed on top. The felt was approved by the Government prior to its placement on the roof. On two buildings, due to inclement weather, the felt was exposed for 10 to 15 days before the shingles were placed on top. The Government became concerned about the condition of the felt on these buildings and retested it to see whether it still met the specifications. Before the test results were received, in order to avoid further exposure of the felt, the plaintiff finished laying the shingles on the roof. According to the Government’s test, the felt failed to meet the specifications. The contracting officer ordered the plaintiff to replace the felt on these roofs. The plaintiff, however, disputed the Government’s method of testing the felt and requested a retesting before it would replace the roofs. When the plaintiff failed to follow the contracting officer’s order to replace the roof, the contracting officer terminated the contract.
The plaintiff made a timely appeal to the Armed Services Board of Contract Appeals (ASBCA), where the default termination was upheld and both liquidated damages and payment of excess costs were imposed on the plaintiff.
The relevant provisions of the contract include:
General Provision 32:
INSPECTION AND ACCEPTANCE (1976 OCT)
(a) All work (which term includes but is not restricted to materials, workmanship, and manufacture and fabrication of components) shall be subject to inspection and test by the Government at all reasonable times and at all places prior to acceptance. Any such inspection and test is for the sole benefit of the Government and shall not relieve the Contractor of the responsibility of providing quality control measures to assure that the work strictly complies with the contract requirements. No inspection or test by the Government shall be construed as constituting or implying acceptance. Inspection or test shall not relieve the Contractor of responsibility for *562 damage to or loss of the material prior to acceptance, nor in any way affect the continuing rights of the Government after acceptance of the completed work under the terms of paragraph (f) of this clause, except as herein-above provided.
(b) The Contractor shall, without charge, replace any material or correct any workmanship found by the Government not to conform to the contract requirements, unless in the public interest the Government consents to accept such material or workmanship with an appropriate adjustment in contract price. The Contractor shall promptly segregate and remove rejected material from the premises.
(c) If the Contractor does not promptly replace rejected material or correct rejected workmanship, the Government (1) may, by contract or otherwise, replace such material or correct such workmanship and charge the cost thereof to the Contractor, or (2) may terminate the Contractor’s right to proceed in accordance with the clause of this contract entitled "Termination for Default - Damages for Delay - Time Extensions. ”
(e) Should it be considered necessary or advisable by the Government at any time before acceptance of the entire work to make an examination of work already completed, by removing or tearing out same, the Contractor shall, on request, promptly furnish all necessary facilities, labor and material. If such work is found to be defective or nonconforming in any material respect, due to the fault of the Contractor or his subcontractors, he shall defray all the expenses of such examination and of satisfactory reconstruction. If, however, such work is found to meet the requirements of the contract, an equitable adjustment shall be made in the contract price to compensate the Contractor for the additional services involved in such examination and reconstruction and, if completion of the work has been delayed thereby, he shall, in addition, be granted a suitable extension of time.
General Provision 26:
TERMINATION FOR DEFAULT - DAMAGES FOR DELAY - TIME EXTENSIONS (1969 AUG)
(b) If fixed and agreed liquidated damages are provided in the contract and if the Government so *563 terminates the Contractor’s right to proceed the resulting damage will consist of such liquidated damages until such reasonable time as may be required for final completion of the work together with any increased cost occasioned the Government in completing the work.
General Provision 76:
LIQUIDATED DAMAGES (1965 JAN)
In case of failure on the part of the Contractor to complete the work within the time fixed in the contract or any extensions thereof, the Contractor shall pay to the Government as liquidated damages, pursuant to the clause of this contract entitled "Termination for Default - Damages for Delay - Time Extensions,” the sum of $9.70 for each day of delay.
The contract also contained a disputes clause (General Provision 27) which obliges the contractor to continue performance in accordance with the contracting officer’s decision while an appeal is pending.
The plaintiff having exhausted his administrative remedies is seeking relief from this court. He contends that both the default termination and the imposition of liquidated damages were improper.[1]
Whether or not a default is excusable is, in general, a question of fact. Anthony P. Miller, Inc. v. United States, 161 Ct. Cl. 455, 474, cert. denied, 375 U. S. 879 (1963). Under the Wunderlich Act, this court may only review an administrative decision as to a question of fact to see whether it is "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.” 41 U.S.C. § 321. The Board decided the federal government met the requirement of general provision 32 - that inspection was made at the site at reasonable times. There was much conflicting evidence- on the record as to this, but there was sufficient testimony to support the ASBCA’s position. It is undisputed that plaintiff failed to replace the felt although general provision 32(b) requires the contractor to replace nonconforming materials. Provision 32(c) provides that failure to replace *564 the material may result in termination of the contract. Although default termination has been termed a "drastic sanction,” J. D. Hedin Construction Co. v. United States, 187 Ct. Cl. 45, 57, 408 F. 2d 424, 431 (1969), this termination is clearly within the contracting officer’s discretion. The contracting officer is obligated to exercise his discretion. Schlesinger v. United States, 182 Ct. Cl. 571, 581, 390 F. 2d 702, 707 (1968). There is no evidence on the record that the contracting officer did not do so.
Whether the contracting officer’s decision to replace the felt was proper is subject to review by the ASBCA. The plaintiff, however, was obligated under the disputes clause of the contract, general provision 27, to continue with the work while disputing the accuracy of the tests made by the Government on the felt. Stoeckert v. United States, 183 Ct. Cl. 152, 391 F. 2d 639 (1968); H & H Manufacturing Co. v. United States, 168 Ct. Cl. 873, 879 (1964). Thus plaintiff was not entitled to cease work and appeal. He was instead obligated to continue roofing and appeal simultaneously. It did not matter whether the Government was right or wrong as to its testing method for the felt. See generally 4 A. J. McBride and I. Wachtel, Government Contracts § 31.150[1] (1978). Had the plaintiff been correct that the tests made on the felt were improper, the plaintiff most likely would have been reimbursed for the extra work done, under general provision 32(e). Under the present circumstances, however, the contracting officer was entitled to terminate the contract for plaintiffs failure to continue work.
The plaintiff has contested the imposition of liquidated damages on the basis of four arguments. First, the plaintiff contends that liquidated damages were improper since the default termination was improper. We have found that the default termination was proper, that the contract was not completed on time, and therefore that liquidated damages were an appropriate remedy under the contract.
Second, the plaintiff argues that it was inappropriate to assess both reprocurement costs and liquidated damages. General provision 26 of the contract provided for the imposition of both. Under the law of this court, the Government is free to impose both types of damages if there *565 is a breach resulting in delay and the contract is relet. Hartford Accident and Indemnity Co. v. United States, 130 Ct. Cl. 490, 127 F. Supp. 565 (1955); Caravel Industries Corp. v. United States, 101 Ct. Cl. 790 (1944). The two types of damages actually remedy separate problems. The liquidated damages are for the inconvenience caused by the delay in completing the contract, whereas the reprocurement costs are for excess costs when the contract is relet.
Third, it is contended that liquidated damages should not have been imposed because the administrative board found the Government’s useful enjoyment of the buildings was unimpaired by the delay in completion. Thus, the issue is whether there need be actual damage suffered before liquidated damages may be imposed.[2] We recognize that this court has not directly addressed this question in recent years.[3] The view, however, that there need be no actual damage, has been implicit in our decisions. Higgs v. United States, 212 Ct. Cl. 146, 546 F. 2d 373 (1976); Young Associates, Inc. v. United States, 200 Ct. Cl. 438, 471 F. 2d 618 (1973); Jennie-O-Foods, Inc. v. United States, 217 Ct. Cl. 314, 580 F. 2d 400 (1978).
In Priebe & Sons, Inc. v. United States, 332 U. S. 407 (1947), the Supreme Court set the standard for determining the validity of a liquidated damages clause:
When the [liquidated damages provisions] are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced. * * * They serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable as is the case in many government con *566 tracts. * * * And the fact that the damages suffered are shown to be less than the damages contracted for is not fatal. These provisions are to be judged as of the time of making the contract.
Id. at 411-412.
Thus, the validity of the liquidated damages clause must be determined as of the time of its making. In Higgs v. United States, 212 Ct. Cl. at 151-152, 546 F. 2d at 377, this court set out requirements that all liquidated damages provisions must meet, including whether "amount of damages bear[s] a reasonable relationship to any actual damage that may be sustained as a result of default.” For support of this proposition, Senior Judge Durfee cited and quoted extensively from the D. C. Circuit’s opinion in Davy v. Crawford, 147 F. 2d 574 (D. C. Cir. 1945):
"If under the circumstances and expectations of the parties existing at the time of execution it appears that the provision is a reasonable protection against uncertain future litigation the provision will be enforced even though no actual damages were proved as of the date of the breach.” [212 Ct. Cl. at 151, 546 F. 2d at 376 (quoting Davy v. Crawford, 147 F. 2d at 575).[4]]
In the present case, at the time of the contract’s execution, it was reasonable to expect that delays in contract completion would result in damages to the Government. This court has consistently followed the standard that a liquidated damages clause reasonable at its inception will be upheld. Jennie-O-Foods, Inc. v. United States, supra; Young Associates, Inc. v. United States, supra. We note other courts have taken the position that liquidated damages may be imposed without proof of actual damage and that such opinions have been cited favorably by this court.[5] Southwest Engineering Co. v. United States, 341 F. 2d 998 (8th Cir.), cert. denied, 382 U. S. 819 (1965) (cited in Jennie-O-Foods, 217 Ct. Cl. at 334, 580 F. 2d at 412) and in Young *567 Associates, Inc., 200 Ct. Cl. at 444, 471 F. 2d at 621); Davy v. Crawford, supra (cited in Higgs v. United States, 212 Ct. Cl. at 151-152, 546 F. 2d at 376-377). Further, boards of contract appeals now routinely award liquidated damages to the Government, although there was no actual damage sustained. See, e.g., Appeal of Brezina Construction Co., ASBCA No. 12403, 67-2 BCA 6606 (1967); Appeal of Paragon Mechanical, ASBCA No. 23006, 80-2 BCA 14667 (1980). We therefore conclude that it was proper for the ASBCA to impose liquidated damages upon the plaintiff.
Lastly, the plaintiff argues that the Board found the reprocurement procedures invalid and that therefore the reprocurement time should not have been the basis for determining liquidated damages. As the defendant correctly points out, this issue was not raised before the ASBCA. An issue that was not raised below cannot now be brought before this court. Union Pacific R. R. v. United States, 208 Ct. Cl. 1, 44-45, 524 F. 2d 1343, 1365 (1975), cert. denied, 429 U. S. 827 (1976); William F. Klingensmith, Inc. v. United States, 205 Ct. Cl. 651, 665, 505 F. 2d 1257, 1266 (1974). The ASBCA did not as the plaintiff asserts find the procurement process invalid; it instead has insufficient evidence on the record about it. There is no evidence on the record that the reprocurement process took longer than it should have. Had the issue been raised below, the Government might have introduced some evidence concerning this. Thus the plaintiff cannot now properly raise this argument without prejudicing the federal government.
it is therefore ordered that defendant’s summary judgment motion be and is hereby allowed. Plaintiffs summary judgment motion is hereby denied. The petition is hereby dismissed.

 In his petition the plaintiff raises only the issue of the propriety of the default termination. The validity of the imposition of liquidated damages is first raised in the plaintiffs brief. The Government, however, raises no objection to this procedure; and since both issues were argued before the ASBCA, the defendant is not prejudiced. We will, therefore, treat the petition as though it had been amended to appeal both issues.

 The ASBCA did not make a finding of fact that there was no damage suffered by the Government because of the delay in contract completion. It stated, "the situation shows the need for a liquidated damages provision being employed, for the establishment of actual damages is difficult.”. ASBCA No. 23443, On motion for reconsideration. It is not clear from this statement whether or not there were actual damages. We need not, however, remand this to the ASBCA for a finding since under the law of this court actual damage need not be shown for the imposition of liquidated damages.

 In Kohlman v. United States, 63 Ct. Cl. 604 (1927), cert. denied, 227 U. S. 584 (1928), this court allowed recovery of liquidated damages though it admitted there was no evidence of actual damage. Rosenblatt v. United States, 63 Ct. Cl. 362 (1927), has been cited in McBride and Wachtel’s Government Contracts for the opposite view - that if there is no pecuniary loss there can be no liquidated damages. 5 A. J. McBride and I. Wachtel, Government Contracts § 34.120. We, however, find the decision there was based upon other grounds.

 It is not clear whether the Government suffered actual damage in Higgs. The resale to a third party of the land following the plaintiffs breach actually resulted in a gain to the Government. The resale, however, took place 9 months after the breach. Further, the liquidated damages were also intended to cover litigation costs.

 We recognize that an opposing view has been taken in the past by some other courts. See, e.g., Massman Constr. Co. v. Greenville, 147 F. 2d 925 (5th Cir. 1945); Rispin v. Midnight Oil Co., 291 F. 481 (9th Cir. 1923).