**DJ MANUFACTURING CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–644C.**

United States Court of Federal Claims.

May 12, 1995.

Marc Lamer, Philadelphia, PA, for plaintiff.

John C. Erickson, III, Washington, DC, with whom was Sharon Y. Eubanks, Asst. Director, David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., and Frank W. Hunger, Asst. Atty. Gen., U.S. Dept. of Justice, for defendant.

## OPINION

SMITH, Chief Judge.

This case comes before the court on the government's motion for summary judgment. Plaintiff contracted to manufacture and provide the government with 283,695 nylon combat field packs for use in Operation Desert Shield/Desert Storm. Pursuant to a liquidated damages clause in the contract, the government withheld $663,266.92 in response to plaintiff's missing of several delivery deadlines. Plaintiff brought this suit to recover the withheld amount, claiming that the contract language constituted an unenforceable penalty. For the reasons discussed below, the court grants the government's motion for summary judgment, finding that the liquidated damages clause in this case is enforceable as a matter of law.

## FACTS

On February 14, 1991, the Defense Personnel Support Center (DPSC)[1] awarded plaintiff Contract No. DLA100–91–C–4108 (the Contract). The Contract required plain-

---

1. The Defense Logistics Agency (DLA) is a branch of the Department of Defense (DOD) which acquires supplies for military personnel through various support centers throughout the United States. The DPSC, located in Philadel- phia, is one of these centers. The DPSC's staff is divided into three directorates, one of which is the Directorate of Clothing and Textiles (DCT), the specific government entity involved in this litigation.

tiff to manufacture and deliver 283,695 nylon combat field packs at a unit price of $29.94, for a total price of $8,493,828. The underlying solicitation, dated January 17, 1991, stated that the packs were "urgently required in support of Operation Desert Storm" and incorporated DPSC Clause 52.212–F006, setting the liquidated damages rate at $\frac{1}{15}$ of 1% per day. The Contract itself included the following liquidated damages clause:

In accordance with paragraph (b) of DPSC clause 52.212–F006, any Liquidated Damages imposed shall be at the rate of $\frac{1}{15}$ percent of the contract price for any article not delivered by the contract delivery date for each day of delay after the delivery date fixed in the contract.

The parties jointly modified the contract once to extend the deadline for delivery for some of the field packs. Nevertheless, plaintiff admits to missing several of the deadlines. Due to plaintiff's failure to deliver the field packs on schedule, the government modified the contract according to the Liquidated Damages clauses, ultimately withholding $663,266.92 of the purchase price. This amounted to approximately a 7.8% reduction.

Plaintiff does not contest any factual issues with regard to missing the delivery deadlines or the mathematical calculations used to compute the amount of damages. Rather, the sole issue raised by the complaint is whether the liquidated damages clause in the contract constitutes a penalty and is thus not permitted in contract law.

## DISCUSSION

### A. Burden of Proof

■ Despite the fact that it is the moving party on this motion for summary judgment, the government is correct in its argument that plaintiff has the burden to allege, and ultimately prove, facts that show the liquidated damages clause operates as a penalty. This court has previously held that the party attacking a liquidated damages clause bears the burden of proving that there is "no reasonable correlation between the amount of liquidated damages and the probable loss to the government as a result of delay in performance." *Prestex, Inc. v. United*

*States,* 3 Cl.Ct. 373, 378 n. 8 (1983), *citing Jennie-O Foods,* 217 Ct.Cl. 314, 338, 580 F.2d 400 (1978).

■ Under the rules of this court, a party moving for summary judgment must demonstrate that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* RCFC 56(c). Plaintiff, the nonmovant, contends that the government cannot meet this burden since there is still a "genuine issue" as to the nature of the sums assessed as liquidated damages. This contention is erroneous. Plaintiff is apparently suggesting that in order to prevail on its dispositive motion, the government must prove the validity of the liquidated damages clause. This proposition would place the burden on the government to disprove the unenforceability of the liquidated damages clause—that is, the government would be faced with the task of proving a negative, a logical impossibility. Requiring the plaintiff to prove that the clause is unenforceable as a penalty, by contrast, is a much more rational allocation of the burden.

Not only is plaintiff's argument that the government bears the burden of proving the validity of the clause illogical, it is also in direct conflict with this court's precedent. Under RCFC 56, the government can meet its burden as the moving party merely by showing that there is an absence of evidence to support plaintiff's allegation that the clause is a penalty:

While the movant bears the initial burden of showing the absence of all genuine issues of material fact, 'the burden on the moving party may be discharged by showing—that is, pointing out to the [ ] court—that there is an absence of evidence to support the non-moving party's case.' Once the movant discharges this burden, the burden falls on the nonmovant to demonstrate 'specific facts showing that there is a genuine issue for trial.' Such evidence must be viewed in a light most favorable to the nonmovant.

*Messerschmidt v. United States,* 29 Fed.Cl. 1, 14 (1993) (footnote omitted) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)).

Thus, the burden in this case falls squarely on the plaintiff to provide sufficient evidence to support its claim that the clause is an unenforceable penalty, rather than on the government to *disprove* this contention.

### B. The Enforceability of the Liquidated Damages Clause

■ Liquidated damages clauses are not· disfavored so long as they constitute "fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract." *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411, 68 S.Ct. 123, 126, 92 L.Ed. 32 (1947). The test for enforceability consists of two factors:

> First, the amount so fixed must be a reasonable forecast of just compensation for the harm that is caused by the breach. Second the harm that is caused by the breach must be one that is incapable or nearly incapable of accurate estimation. If the disputed liquidated damages clause does not satisfy both factors, the court will interpret the contract provision as an unenforceable penalty clause.

*Mega Construction Co. v. United States*, 29 Fed.Cl. 396, 502 (1993).

■ The latter prong of this test is easily disposed of here. The instant case presents a paradigmatic example of a situation where accurate estimation of the damages resulting from delays in delivery is difficult, if not impossible. There can be no doubt that the effect of an absence of critical field packs on military tactics and the danger to under-equipped troops during wartime is substantial. These potential consequences are so great, moreover, that the court must accept the government's assertion that "determining those damages with mathematical precision at the time of execution was nearly impossible." Plaintiff, moreover, has failed to present any evidence sufficient to materially challenge this claim.

Whether or not the ⅟₁₅ of 1% amount is a "reasonable forecast of just compensation," however, presents a more complex issue at the summary judgment stage. Plaintiff argues that the liquidated damages clause in this case was essentially boilerplate, noting that the same rate was used in a number of other procurement contracts. In addition, plaintiff notes that this standard rate was not altered when the urgency of the government's requirements changed as a result of the conclusion of Operation Desert Storm. Thus, plaintiff concludes that the contracting officer made no attempt to forecast potential harm of delays in delivery based on the particular circumstances of this case, but merely incorporated a standard figure that had been used in other solicitations and for other items.

These. arguments, however, are ultimately irrelevant. Plaintiff bears the burden of providing sufficient evidence to warrant a finding that the contracted for rate was an unreasonable forecast of the amount of compensation. Rather than argue the unreasonableness of the amount withheld (approximately a 7.8% reduction in the contract price), however, plaintiff focuses on the procedures and thought processes of the contracting officer who included the rate in the solicitation. This argument reflects a misunderstanding of the test for determining the reasonableness of liquidated damages clauses. The proper inquiry focuses on whether *the amount itself is a reasonable forecast*, not whether, as plaintiff in this case seems to suggest, the individual responsible for proposing the rate engaged in a reasonable attempt to forecast damages.[2]

The proper inquiry, then, is whether or not the amount of damages—regardless of how it was set—constituted a reasonable forecast. In *Young Associates Inc. v. United States*, 200 Ct.Cl. 438, 471 F.2d 618 (1973), the Court of Claims stated:

> Citing the liquidated damages policy section of the Federal Procurement Regulations, 41 C.F.R. § 1–1.315–2(c) (1972), plaintiff says that the incorporation of FP–

---

**2.** Plaintiff repeatedly argues that the contracting officer in this case "set" the ⅟₁₅ of 1% in the liquidated damages clause. This is somewhat inaccurate in that the clause, like the rest of the contract, was agreed to by both parties and was, presumably, the product of their negotiations. Moreover, whether or not plaintiff and the DPSC actually did negotiate the rate is not the point so much as that they had the opportunity to do so.

... into this Interior Department 1964 contract shows that no "case-by-case" consideration was given to the rate of liquidated damages. The answer is, we think, that *the regulation does not require a liquidated-damage schedule to be tailor-made for each individual contract.* It is enough if the amount stipulated is reasonable for the particular agreement at the time it is made.

200 Ct.Cl. at 445, 471 F.2d at 621–22 (footnote omitted) (emphasis added). *See also Cegers v. United States,* 7 Cl.Ct. 615 (1985) (rejecting the argument that use of a standardized rate demonstrates that defendant was setting a standardized penalty rather than attempting to anticipate losses). To sum up, then, the fact that the liquidated damages rate in the instant case may have been a standard rate used in a number of different contracts has no bearing on the issue of whether it was a "reasonable forecast" in these particular circumstances. Rather, plaintiff must prove that the amount was greater than that which the government could reasonably suffer as a result of the delayed delivery of the field packs. Plaintiff has failed to submit any evidence, however, which warrants this conclusion of unreasonableness. If anything, the fact that other contracts have used the ⅟₆₅ of 1% figure suggests precisely the opposite.

Finally, there exists strong Supreme Court dictum suggesting that liquidated damages clauses for delay in the delivery of supplies during wartime are *per se* enforceable. In *Priebe & Sons, Inc. v. United States,* 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32 (1947), plaintiff had contracted to supply a quantity of dried eggs for shipment to England and Russia during World War II. A liquidated damages clause in the contract provided for a deduction from the purchase price if the eggs were not ready for delivery within a ten-day period beginning on May 18, 1942. The eggs were not ready for delivery on that date, but were delivered during the ten-day period and before the government actually requested the shipment. The delivery was thus actually made within the time agreed upon. The

Court denied enforcement of the liquidated damages clause on this account, but at the same time noted that had the shipment not been ready for delivery when requested, the clause would have been enforceable: "It likewise is apparent that the only thing which could possibly injure the government would be failure to get prompt performance when delivery was due. We have no doubt of the validity of the provision for 'liquidated damages' when applied under those circumstances." 332 U.S. at 412, 68 S.Ct. at 126 (citations omitted). The instant case, like *Priebe & Sons, Inc.,* involves the delivery of crucial supplies during wartime. It is reasonably foreseeable, at the time of drafting the contract, that any delay in the receipt of these supplies would result in substantial injury to the government, injury that would be extraordinarily difficult to measure.

## CONCLUSION

"It is well-established that '[i]n countering a motion for summary judgment, more is required than mere assertions of counsel.'" *Cegers v. United States,* 7 Cl.Ct. 615, 621 (1985) (citing *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624 (Fed.Cir.1984). "A non-movant runs the risk of a grant of summary judgment by failing to disclose the evidentiary basis for its claim." *Id.* Plaintiff in the instant case has failed to submit any findings of fact which create a material issue as to the reasonableness of the liquidated damages clause. As discussed above, plaintiff's protestations regarding the procedures used by the contracting officer to arrive at the damages rate have no bearing on the issue of whether the rate itself was a reasonable forecast of damages. In addition, both the use of the same damages rate in other contracts and the wartime context of this case create a presumption of reasonableness in regards to the liquidated damages clause. Plaintiff has failed to meet its burden of providing evidence to counter this presumption. Finally, and perhaps most importantly, the whole purpose of including liquidated damages clauses in contracts is to avoid litigation over damages. A trial in this case would defeat that purpose and would be a

waste of this court's and the parties' resources. Therefore, the government's motion for summary judgment must be granted.

The clerk is directed to dismiss plaintiff's case.

**IT IS SO ORDERED.**