DYK,. Circuit Judge.
 

 This is an appeal from a Board of Contract Appeals decision denying appeals of default terminations on two contracts and denying other numerous discrete claims.
 

 BACKGROUND
 

 In September 1991, the appellant was awarded two construction contracts by the National Forest Service to construct and reconstruct trails in the San Bernadino National Forest. Contract No. 50-9JA9-1-1L039 (“the Trail Contract”) was awarded in the amount of $112,900 with a completion date of May 21, 1992, and Contract No. 50-9JA9-1-1L026 (“the Comfort Station Contract”) was awarded in the amount of $147,777 with a completion date of June 20, 1992. The appellant was to be paid a series of progress payments.
 

 These contracts incorporated provisions of the Davis Bacon Act (“DBA”), Pub.L. No. 107-217, 2002 U.S.C.C.A.N. (116 Stat.) 1062, 1150-1153 (2002), which sets wage and payment guidelines for contractors engaged in public works contracts with the federal government in excess of $2,000. During performance of these contracts in March of 1992, various employees complained of DBA wage violations on the Trail Contract. The Forest Service contracting officer asked appellant to provide evidence of payment of wages to employees, and the contracting officer delayed payment on the Trail Contract’s fourth progress payment that was due in March. Based on a review of the documentation provided by the appellant and his employees, the contracting officer in April 1992 withheld $30,371.41 from the appellant’s fourth progress payment. The appellant contested this withholding with the con
 
 *1180
 
 tracting officer, who issued a final decision in April denying the appellant’s claims. That same month, the Forest Service referred the matter to the Department of Labor (“DOL”) as potential DBA violations, and the DOL investigated the allegations. In July of 1992, the DOL concluded that there were DBA violations on the Trail Contract and requested that the contracting officer withhold a total of $37,905, pending final resolution by the DOL. The DOL, however, did not formally commence a proceeding to determine the amount of the DBA violations for over two years.
 

 Of the $37,905 that the DOL requested to be withheld, $30,371.41 was already withheld from the appellant’s fourth progress payment on the Trail Contract. In July, another $5,630 was withheld from the appellant’s sixth progress payment on the Trail Contract, the fifth progress payment already having been paid in June. Because regulations allowed the contracting officer to withhold payments from any of the appellant’s contracts that were subject to DBA requirements, the remaining $1,903.59 was withheld from the Comfort Station Contract even though the DBA allegations exclusively concerned the Trail Contract.
 

 During the months following the progress payment withholdings, Forest Service inspectors found that the appellant’s progress on the two contracts was gradually becoming more delayed. The appellant requested time extensions on both contracts. The contracting officer denied the appellant an extension on the Trail Contract, but the appellant was nevertheless allowed to continue working past the project’s due date, and the appellant was granted an extension until September 4, 1992, to complete the Comfort Station Contract. The appellant’s contracts were still unfinished by September 18,1992, and the Forest Service terminated both contracts for default. The appellant timely appealed these default terminations to the Board of Contract Appeals in 1993, arguing that his delay was excusable because it resulted from the Forest Service’s erroneous DBA withholdings. The Board dismissed this appeal because the issue of DBA violations was still pending at the DOL.
 

 The DOL did not formally charge the appellant with any DBA violations until July of 1994. The appellant timely objected to these charges in August of 1994, and requested an evidentiary hearing. Due to administrative delay, the DOL administrative law judge did not make a final decision on the matter until January of 1997, when he dismissed the charges against the appellant because of the DOL’s extreme delay. The DOL appealed this decision to the Administrative Review Board, which remanded in part to the DOL administrative law judge to conduct a hearing to determine whether the appellant was actually prejudiced in his defense and whether this prejudice was directly attributable to procedural delay. In 1999, after a hearing, the DOL administrative law judge concluded that the appellant made deductions from employee wages in violation of the DBA, but he found that these violations only amounted to $3,951. Despite the DBA violations, the judge dismissed the charges against the appellant due to prejudicial administrative delay by the DOL, and he ordered that “all monies withheld from [the appellant] be returned to him.”
 
 Bill J. Copeland,
 
 No,1996-DBA-18, slip op. at 50 (Dep’t of Labor Mar. 8, 1999).
 

 The appellant’s previous appeal of the default terminations was then reinstated at the Board of Contract Appeals, and the Board conducted a hearing on the matter in October of 2000. The Board held that the appellant did “not demonstrate! ] ... that the [Forest Service] inappropriately
 
 *1181
 
 withheld monies,” and, therefore, “the [a]ppellant has not established an excusable reason to alter the default determination.”
 
 Bill J. Copeland,
 
 AGBCA nos.1999-182-1, 1999-183-1, 1999-184-1, 1999-185-1, 1999-186-1, 1999-187-1, 2000-147-1, 2000-148-1, 02-2 BCA (CCH) ¶ 32,049, at 158,404 (2002). The Board denied all of the appellant’s other claims, except for the appellant’s claim to $650 for construction of additional sidewalks under the Comfort Station Contract.
 
 Id.
 
 at 158,409. The dissenting Board member urged that while the contracting officer “who withheld the money, acted properly within her role,” the DOL judge’s final determination in 1999 showed that the amount of the withholding was “grossly excessive.”
 
 Id.
 
 at 158,410 (Pollack, J., dissenting). As such, the dissenting Board member would have held that the appellant’s delay was excused and that the default terminations were improper.
 

 DISCUSSION
 

 The primary issue in this case is whether the government properly terminated the Trail Contract and the Comfort Station Contract for default. The Board found that the appellant’s performance was delayed and that the delay was not excusable. “Whether or not a default is excusable is ... a question of fact”, therefore, the question is whether the Board’s decision is supported by substantial evidence.
 
 Kirchdorfer, Inc. v. United States,
 
 229 Ct.Cl. 560 (Ct.C1.1981) (citing
 
 Anthony P. Miller, Inc. v. United States,
 
 161 Ct.Cl. 455, 474 (Ct.Cl.),
 
 cert. denied
 
 375 U.S. 879, 84 S.Ct. 149, 11 L.Ed.2d 111 (1963)).
 

 The appellant contends that the delay that resulted in the default terminations was excusable because it was caused by the Forest Service’s improper withhold-ings on both contracts. The Forest Service withheld progress payments based on the contracting officer’s determination that the appellant failed to pay his employees as required by the DBA. The DBA requires a contractor who is a party to a government contract for public works to:
 

 pay all mechanics and laborers employed directly on the site of the work, unconditionally and at least once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less than those stated in the advertised specifications, regardless of any contractual- relationship which may be alleged ■ to exist between the contractor or subcontractor and the laborers and mechanics.
 

 40 U.S.C. § 3142(c)(1). The statute further provides that if a contractor fails to meet the DBA’s wage requirements, “there may be withheld from the contractor so much of accrued payments as the
 
 contracting officer considers necessary
 
 to pay to laborers,” which is defined as “the difference between the rates of wages required by the contract to be paid laborers ... and the rates of wages received by the laborers.”
 
 Id.
 
 § 3142(c)(3) (emphasis added). This provision of the DBA was incorporated by reference into the Trail Contract and the Comfort Station Contract via Federal Acquisition Regulation clause 52.222-6, 48 C.F.R. § 52.222-6 (2002). The contracts also contained the “Withholding of Funds Clause,” Federal Acquisition Regulation clause 52.222-7. This clause reads: .
 

 The Contracting Officer shall, upon his or her own action or upon written request of an authorized representative of the Department of Labor, withhold or cause to be withheld from the Contractor under this contract or any other Federal contract with the same Prime Contractor, or any other federally assisted contract subject to Davis-Bacon
 
 *1182
 
 prevailing wage requirements, which is held by the same Prime Contractor, so much of the accrued payments or advances
 
 as may be considered necessary to pay laborers ...
 
 the full amount of wages required by the contract. In the event of failure to pay any laborer ... the Contracting Officer may, after written notice to the Contractor, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased.
 

 48 C.F.R. § 52.222-7 (emphasis added).
 

 The appellant contends that he was not obligated to pay DBA wages because he was a “non-union” employer and that any withholdings were, therefore, improper. This contention is without merit because both of his contracts explicitly incorporated the DBA wage requirements, and they are not limited to employers of union members.
 

 However, there is a question as to whether the amount withheld was excessive. Ordinarily, if the government withholds amounts from progress payments as a set-off, the withholding is proper only if the amount of the set-off is found to have been properly computed.
 
 See Johnson v. All-State Constr., Inc.,
 
 329 F.3d 848 (Fed. Cir.2003). Where amounts were withheld because of potential DBA violations, a different standard applies. As the Board noted, the withholdings are proper as long as the amount withheld depended on a reasonable judgment of the contracting officer that the withheld amounts were needed to protect the employees’ interests.
 
 See Monarch Enters., Inc.,
 
 VABCA Nos. 2239, 2296, 86-3 BCA (CCH) ¶ 19,281, at 97,483 (1986). While the DOL makes the final decision .on allegations of DBA violations and determines the precise amount owed by the employer, the “Withholding of Funds” clause authorizes a contracting officer upon its own action or upon a request by the DOL to “withhold or cause to be withheld from the Contractor ... so much of the accrued payments or advances as may be considered necessary to pay laborers,” 48 C.F.R. § 52.222-7, pending the DOL’s final determination on the matter.
 
 See Sealtite Corp.,
 
 ASBCA No. 30.353, 87-1 BCA (CCH) ¶ 19,469, at 98,390 (1986) (holding that a contracting officer was properly withholding payments from a contractor pending final determination by the DOL, despite the fact that the amount owed to the contractor’s employees depended on the DOL’s decision as to the employees’ wage classification);
 
 see also Servicemaster of W. Cent. Ga.,
 
 DOT CAB No. 1096, 80-2 BCA (CCH) ¶ 14,676 (1980).
 

 Here, as the dissenting Board member points out, there are serious questions as to whether the amounts withheld by the Forest Service were proper. The DOL administrative law judge who reviewed the propriety of the withholdings was able to verify only $3,951 in violations, as compared to the $37,905 withheld. And, he did so in 1999, seven years after the Forest Service made the initial with-holdings.
 

 Because the appellant had the burden of showing that his delay was excusable in light of the Forest Service’s withholdings,
 
 see DCX, Inc. v. Perry,
 
 79 F.3d 132, 134 (Fed.Cir.),
 
 cert denied,
 
 519 U.S. 992, 117 S.Ct. 480, 136 L.Ed.2d 374 (1996), he had the burden of establishing that the amounts withheld were unreasonable.
 
 See
 
 5 John Cosgrove McBride & Thomas J. Touhey,
 
 Government Contracts
 
 § 36A.180[3], at 36A-234 (2001). The majority of the Board determined that the appellant had not met this burden, stating that the appellant “would have had to have shown that the [contracting officer] acted unreasonably based on the information she had at the time for the withholding to have
 
 *1183
 
 constituted excusable delay.”
 
 Bill J. Copeland,
 
 02-2 BCA (CCH) ¶ 32,049, at 158,403. The Board found that the appellant had “ample opportunity to provide data to [the contracting officer to] demonstrate that the claims were not true or to establish that the figure owed was a lesser amount,” but the “responses provided by [the] [a]ppellant were not adequate” and “provided only the sketchiest of data,” highlighting the fact that the appellant could not verify that he had made the contested payments when the Forest Service asked him to do so.
 
 Id.
 
 at 158,404. The Board held that the Forest Service’s withholdings could not be deemed excessive or unreasonable at the time they were made in light of the sparse documentation provided to them by the appellant.
 
 Id.
 
 The appellant has failed to show that the Board’s finding was not supported by substantial evidence.
 

 We note that the problem here stemmed only in part from the amount of the withholding; the more serious problem was caused by the DOL’s extraordinary delay in resolving the matter. Had the appellant, after a reasonable period of time to allow the DOL to reach a final decision, asked the contracting officer to release the funds because the DOL’s delay rendered further withholdings unreasonable, we would have a very different case. But there is no suggestion that any such request was made.
 

 We have examined the appellant’s other contentions, including claims that the contracting officer’s failure to appear at the DOL hearing constituted a breach of contract; that the appellant is entitled to interest on the monies withheld by the Forest Service; and that the contracting officer denied the appellant due process. We find them to be without merit.
 

 CONCLUSION
 

 For the foregoing reasons we affirm the decision of the Board of Contract Appeals.
 

 AFFIRMED.
 

 COSTS
 

 No costs.