George W. HIGGS et al.

v.

The UNITED STATES.

No. 250–75.

United States Court of Claims.

Dec. 15, 1976.

F. Robert Troll, Jr., Hyattesville, Md., atty. of record, for plaintiffs.

Dorothy R. Burakreis, Washington, D. C., with whom was Asst. Atty. Gen. Peter R. Taft, Washington, D. C., for defendant; Nicholas S. Nadzo, Washington, D. C., of counsel.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and BENNETT, Judge.

ON PLAINTIFFS' MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

DURFEE, Senior Judge.

Plaintiffs seek to recover $91,000 paid to the Department of Housing and Urban Development (HUD) in accordance with a contract by which plaintiffs intended to purchase, and HUD intended to sell, two parcels of realty located in Texas (designated Hampton Place I and II). In response to HUD's invitation to bid, plaintiffs submitted a sales contract prepared by HUD as the bid form. Both the invitation to bid

and the top of the first page of the sales contract described or identified the project by number, and as Hampton Place I and II. It is undisputed that both parties at the time of execution believed the contract described Hampton Place I and II. However, Schedule "A" of the contract, designed to describe the realty in detail, through an error in draftsmanship, described Hampton Place II twice, and omitted any description of Hampton Place I.

Plaintiffs executed the agreement and made an earnest money deposit of $90,000 with HUD on May 14, 1974. The total contract price was to be $1,841,500. A provision in the contract (Paragraph 14) provided that this deposit be retained as liquidated damages in the event of breach by the purchaser. On August 1, 1974, HUD executed the contract in the District of Columbia. Closing was to be held no later than October 1, 1974.

On September 30, 1974, the then counsel for plaintiffs, Mr. Gilmore, notified HUD that he had discovered the error in the property description. HUD granted an extension of time for closing, the new date being October 11, 1974. On October 3, 1974, a HUD official informed plaintiffs that a complete and accurate property description had been prepared, and that this description would be attached to the appropriate documents at closing. In consideration for an additional $1,000 earnest money deposit, plaintiffs subsequently were granted a further extension date of November 1, 1974.

Plaintiffs refused to close within the appointed time. In a letter of November 22, 1974, HUD informed plaintiffs that the contract was terminated and the earnest money deposits would be retained as liquidated damages. HUD subsequently sold the property in question on August 1, 1975 to a third party for a total sum of $1,853,000.

The contract was executed by the parties under a mutual mistake of fact as to the contract description of this property to be conveyed: the description of "Hampton Place II" twice, and the omission of any description of "Hampton Place I". At that time, both parties mistakenly believed that the contract described both Hampton Place I and Hampton Place II.

Plaintiffs urge that, since the contract of sale was entered into by the parties under a mutual mistake of a material fact, no enforceable agreement between the parties ever came into existence. This mistake in the property description neither induced plaintiffs to enter into an agreement they did not fully contemplate, nor did it lead them to rely upon the written contract to their detriment. In support of its cross-motion for summary judgment, defendant submitted affidavits by its counsel and officials that are not controverted by plaintiffs, and establish the following facts.

On September 30, 1974, counsel for plaintiffs, Mr. Gilmore, notified an attorney for HUD, Mr. Patton, of the error in the property description. Mr. Patton promptly informed Mr. Gilmore on or about October 3rd that HUD actually intended to sell both Hampton Place I and Hampton Place II, and that an accurate property description had been prepared which "would be substituted for the erroneous one in the documents which Mr. Gilmore would bring to the closing scheduled for October 11, 1974", according to the undisputed affidavit of Mr. Patton. This affidavit, along with the uncontroverted affidavits of Mr. Hilman and Mr. Divelbiss, also establishes that, through subsequent conversations with HUD officials, Mr. Gilmore requested a second extension of time for closing the sale due to "trouble with the trusts" or an internal problem among plaintiffs. At no time did plaintiffs' attorney indicate any intention to repudiate the contract of sale or demand a return of plaintiffs' earnest money deposits until after defendant notified plaintiffs that the contract of sale was terminated on November 22, 1974, for failure to close within the prescribed time. These relevant facts are established by affidavits of defendant's officials or agents. They are not controverted by affidavits or specific facts by plaintiffs, and together with the other undisputed facts hereinafter set forth, are sufficient for entry of summary judgment for defendant.

This court has the power, where the written instrument fails to reflect the true intent of the parties through a mutual mistake of fact, to reform the contract to express the intention of the parties. *Sutcliffe Storage & Warehouse Co. v. United States*, 112 F.Supp. 590, 593–94, 125 Ct.Cl. 297, 304 (1953). Rescission, by contrast, is appropriate only where the mistake affects the very essence of the agreement.

[A] mistake, in order to justify rescission, must relate to the intrinsic nature of the bargain; * * * a mistake in regard to a collateral matter or in regard to some matter which formed merely the inducement to a contract is said to be without effect. * * * [A] mistake vitally affecting a fact or facts on the basis of which the parties contracted renders their contract voidable by an injured party. 13 Williston on Contracts, § 1544 (3d ed. 1970).

The key distinction to be made is whether the error in description affected the substance of the agreement, or whether it merely reflected an error in expression which was promptly recognized by both parties as not representing the intent of either. Plaintiffs affirmed correction of the agreement by requesting two extensions of time for closing the sale, and never actually repudiated the contract until February 3, 1975. This was four months after plaintiffs' counsel first notified HUD of the error in drafting the property description. Accordingly, the contract is reformed to encompass both parcels of real property, correctly described on page one of the Contract of Sale and Purchase as "Project: Hampton Place I and II; Project No.: 112–35089/141; City and State: DeSoto, Texas".

The argument of plaintiffs that the contract of sale and purchase violates the District of Columbia Statute of Frauds due to its incomplete and erroneous description of the property intended to be conveyed is now rendered moot by the reformation of the contract correcting this description to conform to the actual intent of both parties thereto.

Plaintiffs also argue that the liquidated damages clause in the contract constituted an unenforceable penalty. Paragraph 14 of the contract provides:

Time is of the essence of this contract. The sale shall be closed within 60 days following the effective date of this contract at a place designated by the Seller, or at such other time as may be agreed to by the parties in writing. Should the Purchaser fail or refuse to perform his part of the contract promptly at the time or in the manner herein specified, *the earnest money deposited herewith shall, at the option of the Seller, be retained as liquidated damages.* [Emphasis added].

Both parties have cited *Davy v. Crawford*, 79 U.S.App.D.C. 375, 147 F.2d 574, 575 (1945) in support of their respective positions:

This court has held that the parties to a contract may agree in advance to a sum certain which shall be forfeited as liquidated damages for breach of the contract without reference to the actual damages found at the time of the breach. But if such an agreement is for a penalty it is void. In order to determine whether or not the provision should be construed as a penalty the contract must be construed as a whole as of the date of its execution. If under the circumstances and expectations of the parties existing at the time of execution it appears that the provision is a reasonable protection against uncertain future litigation the provision will be enforced even though no actual damages were proved as of the date of the breach. If, on the other hand, it appears that the stipulation is designed to make the default of the party against whom it runs more profitable to the other party than performance would be, it will be void as a penalty. Thus, damages stipulated in advance should not be more than those which at the time of the execution of the contract can be reasonably expected from its future breach, and agreements to pay fixed sums plainly without reasonable relation to any probable damage which may follow a breach will not be enforced.

■ We are required to make several inquiries to determine whether this contract provides for liquidated damages as stated, or whether it imposes a penalty. First, did the parties intend to provide for liquidated damages or a penalty? *Wise v. United States*, 249 U.S. 361, 365, 39 S.Ct. 303, 63 L.Ed. 647 (1919). Second, does uncertainty in the amount and difficulty in ascertainment of damages support the provision for liquidated damages in this contract? *Barnette v. Sayers*, 53 U.S.App.D.C. 169, 289 F. 567, 570 (1923). Third, does the amount of damages bear a reasonable relationship to any actual damages that may be sustained as a result of default? *Davy v. Crawford*, 147 F.2d at 575.

■ The parties expressly provided for liquidated damages in Paragraph 14 of the contract. Elements of damages that were not uncertain, and could have been determined at the time of execution of the contract, include future real estate taxes, carrying charges, loss of interest charges, costs of readvertising the sale, and continuing maintenance costs. However, there are other areas in which HUD could have sustained future substantial losses which were not definitely ascertainable when the contract was executed. For example, the litigation against which the liquidated damages of $90,000 were designed to protect is still ongoing; these costs remain to be calculated. When defendant did attempt to sell after plaintiffs' breach of the contract, a minimum bid of $1,728,000 was sought, which could have resulted in a loss to defendant of the $113,500 difference between the minimum bid price and plaintiffs' contract price of $1,841,500. The resale to a third party took place nine months after plaintiffs' contract was to have been closed, and was for $1,853,000, or a gain to defendant of $11,500 over plaintiffs' original sale price. This fluctuation in sales prices demonstrates that there was considerable uncertainty in sales prices within a one-year period from the execution of the contract.

The affidavit of Mr. Cameron, who supervised the management and sale of all HUD-owned property, establishes that the estimated amount of liquidated damages in this case was well within the range of similar estimates established by HUD's past experience and practice. An earnest money deposit must be submitted on each bid to insure that only serious bids are received. The provision for liquidated damages was a standard provision, and represents a rough estimate of the actual future damages that HUD might sustain in case of default by a purchaser. The amount of required earnest money is based on a percentage of the minimum bid price or of the estimated value of the property. The great majority of HUD sales are for properties valued from about $100,000 to $2,000,000 and, within this range, HUD's general rule is to request an earnest money deposit of roughly five percent of the estimated value of the property, which is approximately the amount of the earnest money paid by plaintiffs in this case. In the case of default by a purchaser, HUD's practice is to retain the earnest money deposited by the purchaser as liquidated damages, and not to seek additional compensation through litigation. These relevant facts, established by the Cameron affidavit for defendant, are not controverted by affidavit or specific facts by plaintiffs. All of these factors, taken together, support the conclusion that the liquidated damages provision in the contract was "a reasonable protection against uncertain future litigation * * * even though no actual damages were proved as of the date of the breach." *Davy v. Crawford*, 147 F.2d at 575.

■ According to the affidavit of Mr. Hilman, an official of HUD, the attorney for plaintiffs stated on October 14, 1974, that plaintiffs "would submit $1,000 in exchange for a two-week extension of time for closing the sale", and the second extension of time was granted upon receipt of this amount. As in the case of the $90,000 earnest money deposit, plaintiffs cannot prevail on their claim that this $1,000 payment should constitute an unlawful penalty. This second extension of time, for which plaintiffs paid $1,000, is totally inconsistent with their attempt to disaffirm the contract several months later.

**378**

All of the facts established by the aforesaid affidavits for defendant are uncontroverted by plaintiffs and, together with the other undisputed facts, are sufficient for summary judgment under our Rule 101(f).[1] Accordingly, we conclude that the contract is reformed to correct the clerical misdescriptions of the property in the contract; plaintiffs' Statute of Frauds argument is rejected; and the liquidated damages provision is upheld.

Plaintiffs' motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted. Plaintiffs' petition is dismissed.

---

1. Rule 101(f) of this court provides:

"Form of Affidavits; Further Testimony: Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him."