This breach of contract case is presented to the court on defendant’s motion for summary judgment and plaintiffs’ *579 response in objection thereto. We allow the motion and dismiss the petition.
Plaintiff Frangella Mushroom Farms, Inc. (corporate plaintiff) is engaged in the business of growing mushrooms. The individual plaintiff, Joseph C. Frangella, is president and majority stockholder. Plaintiffs assert breach of contract arising out of promises of financial assistance allegedly made by the Economic Development Administrative (EDA), of the Department of Commerce, to the corporate plaintiff. The individual plaintiff sues for personal damages said also to have been sustained from the alleged breaches.
Beginning in 1976, the corporate plaintiff made unsuccessful attempts to obtain federal financial assistance under 19 U.S.C. §2341 (Trade Act of 1974). Litigation ensued in the United States District Court for the Northern District of New York which, on February 20, 1979, remanded the matter to EDA with instructions to determine eligibility of plaintiff for certification for adjustment assistance. After extensive investigation and review EDA decided that plaintiff did not qualify under the statutory requirements for certification. This decision was unsuccessfully appealed and is not now in issue.
Corporate plaintiff thereafter sought assistance of a Member of Congress and made application for a direct business development loan under 42 U.S.C. § 3142 (1976), in the amount of $1,500,000, later reduced to $1,000,000. Because EDA’s direct loan funds were exhausted in April 1980, it determined that the most it could do would be to guarantee a bank loan if it was found to be a sound loan. Accordingly, a series of meetings ensued between Mr. Frangella and representatives of the Key Bank of Albany, New York, and representatives of EDA. These meetings are referred to in greater detail below. Because the bank and EDA became aware of certain adverse financial information about the corporate plaintiff, it was requested to furnish information to demonstrate its repayment ability.[1] *580 This effort did not result in dispelling the issue and the application was denied finally on August 1, 1980. This suit followed on October 16,1980.
The central issue presented to the court is whether there was in fact any authorized promise or promises by government agents to plaintiffs of financial assistance by EDA, as alleged. If such promises were made, we must determine whether they constitute an express contract or a contract implied in fact. There is a final question as to whether Mr. Frangella, the individual plaintiff, has stated a claim upon which relief can be granted.
Plaintiffs’ petition and brief place great emphasis on certain meetings between representatives of plaintiffs and those of EDA on November 5, 1979, and May 15, 1980. It is represented to us that at the first of these meetings, in Philadelphia, Edward J. Morris, Chief of the Business Development Division of the Atlantic Regional Office of EDA, and his assistant, Jack Geraghty, a financial analyst, assured plaintiffs that "the necessary paper work would be forwarded and the direct loan was approved and a closing would take place between December 20, 1979, and January 20, 1980.” There were delays, however. Careful review convinced Mr. Morris that corporate plaintiff was "technically insolvent.” A meeting of representatives of plaintiffs, EDA, and of the Key Bank took place on April 4, 1980, at which time plaintiffs were advised that no direct loan monies were available, but that EDA would entertain an application for a guaranteed loan. Plaintiffs claim $20,000,000 in breach damages for failure to make the direct loan allegedly promised. Mr. Frangella claims a like amount.
The meeting of May 15,1980, was held in Washington, D. C. At this meeting EDA was represented by Robert Dennis, an EDA financial analyst in the Project Review Division, Office of Development Finance Projects. Plaintiffs claim that Mr. Dennis said the guarantee by EDA of 90 percent of the loan "would be forthcoming” and would be sent to Key Bank on or about June 13, 1980. Plaintiffs were required to submit supplementary data. In early August 1980 plaintiffs received a letter from EDA advising that the guarantee for the million dollar loan would not be forthcoming. Plaintiff *581 corporation claims $20,000,000 in damages for breach of express contract. The damages are claimed to be for loss of credit and for reimbursement of expenses occasioned by defendant’s bad faith and delays, and misrepresentations concerning the matter of guaranteeing a bank loan. Mr. Frangella claims a like amount in personal damages.
The stark assertions in the petition claiming that plaintiffs received definite and binding promises from EDA are unsupported by documentation. Without doubt the parties anticipated that, if they reached a meeting of minds, any agreements would be documented. United States v. American Renaissance Lines, Inc., 494 F.2d 1059 (D.C. Cir.), cert. denied, 419 U.S. 1020 (1974). The most that can be said on plaintiffs’ behalf is that defendant’s representatives agreed to help the corporate plaintiff if plaintiff could demonstrate the necessary financial soundness and potential ability to repay funds directly loaned, or loans guaranteed. Extensive review of plaintiffs’ financial situation was made and is in the record before us. It demonstrates that plaintiffs’ hopes for financial assistance were dashed by its inability to meet income projections, inability to sell all of its product as represented to EDA, lack of qualified management, inadequate record keeping, and insufficient collateral. Plaintiffs were deeply in debt, even to the extent of using personal life insurance of the Frangella family members as collateral. It is difficult to believe that Mr. Frangella really believed that he had a binding promise that EDA would guarantee a bank loan for him. Two months after the alleged guarantee agreement he wrote to EDA on July 9,1980:
Please be advised that, in regard to the condominium that I own in the State of Florida, I hereby agree that, in the event the One Million ($1,000,000) Dollar anticipated EDA guaranteed loan is approved and carried out, I will invest the net proceeds, after taxes, from the sale of the condominium into Frangella Mushroom Farms, Inc. [Emphasis added.]
Defendant has furnished the court with the sworn affidavits of Edward J. Morris, Jack Geraghty, and Robert Dennis. They all deny making the promises plaintiffs claim were made and further state that they had no authority to make such promises and so advised plaintiffs on more than *582 one occasion. These statements as to authority accord with applicable EDA directives, likewise a part of the record. Absent .a showing of the necessary authority, and this is plaintiffs’ burden which has not been met, there can be no contract. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947); Thanet Corp. v. United States, 219 Ct. Cl. 75, 591 F.2d 629 (1979); Haight v. United States, 209 Ct. Cl. 698, cert. denied, 429 U.S. 841 (1976); Jascourt v. United States, 207 Ct. Cl. 955, cert. denied, 423 U.S. 1032 (1975).
We can find no express contract, no contract implied in fact, and no authority in the named agents to make such contracts. Had corporate plaintiff been able to establish eligibility for assistance, these agents could have recommended it to their superiors for final action. They did not do so. They expressed a willingness to consider an application which might eventually lead to a binding loan agreement. This is not enough to establish a contractual relationship. Nor do plaintiffs’ disappointment and efforts to comply with defendant’s requirements for information establish a contract. Maimon v. United States, 219 Ct.Cl. 684 (1979); Tree Farm Development Corp. v. United States, 218 Ct. Cl. 308, 585 F.2d 493 (1978).
The claims of the individual plaintiff are that he changed his position to his detriment when he relied on the alleged promises of defendant and expended his personal assets and credit to keep plaintiff corporation afloat while waiting for EDA to deliver on its promises. Mr. Frangella sought to make a contract for his corporation. Individually, he was not at any time in privity with the defendant in a contractual way. If defendant had any duty here, it was to the corporate plaintiff. The individual plaintiff has not stated a claim on which relief can be granted. He has no standing to sue in this court even though he was corporate plaintiffs "guiding light.” Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 428 F.2d 1241 (1970).
Just as we must reject plaintiffs’ claim of a contract implied in fact because of failure to prove a mutual intent to contract, so must we reject plaintiffs’ assertions that defendant is bound by equitable estoppel. The latter doctrine requires a showing that the party against whom estoppel is to be set up acquiesced in the alleged transaction *583 and had authority to do so. Clearly, there was no such acquiescence here. Emeco Industries, Inc. v. United States, 202 Ct. Cl. 1006, 1014-15, 485 F.2d 652, 657-58 (1973). Byrne Organization, Inc., v. United States, 152 Ct. Cl. 578, 287 F.2d 582 (1961).
Finally, plaintiffs would have us deny summary judgment and remand the case for trial on the disputed issue of whether there was a contract implied in fact. Mr. Frangel-la’s affidavit proclaims that he received binding promises from defendant. There is also before us the affidavit of a certified public accountant, Arthur Place, who aided in the preparation of corporate plaintiffs applications for financial assistance and who attended the aforesaid meetings and heard defendant’s agents make allegedly binding promises, first of a direct loan, and later of a guaranteed loan. Plaintiffs also proffer a guaranty agreement dated June 30, 1980, but it is unsigned by anyone for defendant.
If we could see any realistic possibility that a trial, preceded by discovery, would or even might establish a contract, either express or implied in fact, based on oral statements by defendant’s agents, we would order it. Such an order here would waste the resources of the parties and of the court. We have the affidavits of defendant’s agents. While what they say as to promises made is contradicted by Mr. Frangella and Mr. Place, plaintiffs have not shown authority in Messrs. Morris, Geraghty, and Dennis to make the allegedly binding promises. Of course, it is not in the nature of government to permit itself to be committed to the expenditure of a million dollars in the loose fashion described in this case. Part of plaintiffs’ complaint here pertains to delay costs arising from defendant’s insistence on what plaintiffs regard as too much documentation to support EDA decision-making on plaintiffs’ application. Yet, plaintiffs do not allege that there was anything in writing by which defendant can be bound here on its alleged promises so there is nothing useful to discover. And as to testimony, we have it by affidavit. We believe the affidavits furnished by defendant to have the greatest credibility in this case.
it is therefore ordered, upon consideration of defendant’s motion for summary judgment and plaintiffs’ re *584 sponse thereto, the exhibits furnished by the parties and the authorities cited by them, but without oral argument, plaintiffs’ motion therefor being denied, that defendant’s motion for summary judgment is granted. The petition is dismissed.
Plaintiffs petition for certiorari was denied April 5,1982.

 There was already substantial state and federal government participation in this company. Farmers Home Administration had guaranteed 90 percent of a $400,000 loan made in October 1979. The Small Business Administration guaranteed approximately 43 percent of a $600,000 loan made in November 1973, and the New York State Job Development Authority purchased a $410,000 participation in a loan made by Key Bank in June 1978.