**Leon L. CEGERS,**

v.

**The UNITED STATES.**

**No. 292–84C.**

United States Claims Court.

March 14, 1985.

William S. Stern, Oak Park, Michigan, for plaintiff.

Kathleen A. Flynn, Washington, D.C., with whom were Acting Asst. Atty. Gen. Richard K. Willard, Dir. David M. Cohen, and Asst. Dir. Thomas W. Petersen, Washington, D.C., for defendant. Robert Leong, Chicago, Ill., of counsel.

## OPINION

LYDON, Judge:

This contract case is before the court on defendant's motion for summary judgment and plaintiff's opposition thereto. Defendant maintains that no issue of material fact exists and that it is entitled to judgment as a matter of law. Plaintiff argues that there are issues of material fact in dispute. The dispute in this case focuses on the enforceability of a liquidated damages provision in a contract between plaintiff and defendant for the sale of certain property after plaintiff failed to complete the purchase as agreed. After considering the submissions of both parties and pertinent case law, and without oral argument, the court grants defendant's motion for summary judgment.

### I.

On July 15, 1982,[1] plaintiff and the United States Department of Housing and Urban Development (HUD) entered into a Contract of Sale and Purchase of certain property.[2] The purchase price of said property was $200,000. The contract required plaintiff to pay 10 percent of the purchase price, or $20,000, as an earnest money deposit at the time the contract was signed. The remaining $180,000 was to be paid by plaintiff at the time of closing.

---

1. Plaintiff states in his brief that he entered into the contract with HUD on June 9, 1982. It is true that plaintiff executed the contract on June 9, 1982. However, HUD did not execute the instrument until July 15, 1982. Plaintiff cites the proper contract effective date, *i.e.,* July 15, 1982, in his complaint. Complaint ¶ 1.

2. The property was described as the West Chicago Townhouses, located at 20611–47 West Chicago, 9401–11 Patton, and 9404–14 Braile in Detroit, Michigan.

Plaintiff failed to complete the purchase as he agreed to do in the contract of sale. He maintains that he was unable to secure the necessary finances which he needed to pay the remaining balance. In a letter dated August 2, 1982, to a HUD Administrative Closing Officer, Jean Nash (Nash), plaintiff confirmed his July 29, 1982, conversation with said officer in which he had indicated that he "would have to release the sale on that property because my [his] source of finance had failed." In the same letter plaintiff conceded that Nash had not made any promises concerning the return of his earnest money deposit and he expressed a willingness "to pay for any damages that have incurred since July 15, 1982 * * *."

As a consequence of plaintiff's failure to close within 30 days following the execution of the contract on July 15, 1982, HUD retained plaintiff's earnest money deposit as liquidated damages pursuant to paragraph 7 of the contract. Plaintiff filed his complaint in this court on June 8, 1984, asserting, among other things, that retention of his earnest money deposit was unreasonable because such liquidated damages have no basis in reality.

## II.

In the contract of sale between plaintiff and defendant, the liquidated damages provision provides:

**3.** Paragraph 7 established that all extensions would be for 30 days and would only be granted on the following conditions:

(a) A written request for any extension must be received by the Seller, at its office where the closing is to be held, ten (10) days *before* the expiration of the 30 day period or any *extended period and must be accompanied by the required extension fee.*

The request must state the reason for the Purchaser's inability to close the sale within the initial 30 day period or any extended period.

(b) For each 30 day extension, an extension fee of 2% of the purchase price is required.

(c) For each 30 day extension, the entire extension fee is to be retained by the Seller and will not be credited to the amount due at

## 7. TIME IS OF THE ESSENCE, LIQUIDATED DAMAGES AND EXTENSIONS

Time is of the essence of this contract. The sale shall be closed within 30 days following the execution hereof by the Seller at the office of the Seller, or at such other time and place as may be agreed on by the parties in writing. Should the Purchaser fail or refuse to perform his part of the contract promptly, at the time or in the manner herein specified, the earnest money deposited herewith shall be retained by the Seller as liquidated damages.

Paragraph 7 of the contract also provided for extensions of the time for closing the sale. Said extensions were entirely within the discretion of defendant.[3]

It is uncontradicted that plaintiff failed to complete his purchase obligations and thus defendant retained his earnest money deposit pursuant to paragraph 7 of the contract cited above. Plaintiff challenges said retention of his earnest money deposit as liquidated damages on two grounds. First, plaintiff asserts that the liquidated damages provision is against public policy because it contains no mutuality of remedy. Second, plaintiff contends that the liquidated damages provision is unreasonable because the damages have no basis in reality.

■ In addressing plaintiff's argument that the liquidated damages provision is against public policy, it is clear that the law

closing, unless the Purchaser closes prior to the expiration of an extension period. Then, the prorated amount of the extension fee, for the unused portion of the extension, will be credited toward the amount due at closing.

(d) In the event the Purchaser fails to close the sale prior to the expiration of the 30 day period or any extension agreed to by the Seller, the earnest money deposit and all extension fees shall be retained as liquidated damages.

(e) The granting of one or more 30 day extensions shall not obligate the Seller to grant additional 30 day extensions, and the Seller may declare a default for the Purchaser's failure to close the sale upon the expiration of the original 30 day period or upon expiration of any extension thereof.

is to the contrary. The United States Supreme Court in *Priebe & Sons v. United States*, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32 (1947) stated:

> Today the law does not look with disfavor upon "liquidated damages" provision in contracts. When they are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced. *Wise v. United States, supra* [249 U.S. 361], p. 365 [39 S.Ct. 303 p. 304, 63 L.Ed. 647 (1919)]; *Sun Printing & Pub. Assn. v. Moore*, 183 U.S. 642, 672–674 [22 S.Ct. 240, 252–253, 46 L.Ed. 366 (1902)]; Restatement, Contracts § 339; *Dunlop Pneumatic Tyre Co. v. New Garage & M. Co.*, [1915] A.C. 79. *And see Kothe v. Taylor Trust*, 280 U.S. 224, 226 [50 S.Ct. 142, 143, 74 L.Ed. 382 (1930)]. They serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts. *United States, v. Bethlehem Steel Co., supra* [205 U.S. 105], p. 121 [27 S.Ct. 450, 456, 51 L.Ed. 731 (1907)]; *Clydebank Engineering & Shipbuilding Co. v. Castaneda*, [1905] A.C. 6, 11–13, 20; *United States v. Walkof*, 144 F.2d 75, 77 [(2 Cir.1944)]. And the fact that the damages suffered are shown to be less than the damages contracted for is not fatal. These provisions are to be judged as of the time of making the contract. *United States v. Bethlehem Steel Co., supra* [205 U.S.], p. 121 [27 S.Ct. p. 456]. [332 U.S. at 411–12, 68 S.Ct. at 126].

Therefore, in general, liquidated damages provisions are not against public policy. For additional support for this proposition see *JMNI, Inc. v. United States*, 4 Cl.Ct. 310, 315 (1984); *Prestex, Inc. v. United States*, 3 Cl.Ct. 373, 382 (1983), *aff'd without opinion*, 746 F.2d 1489 (Fed.Cir.1984); *Skip Kirchdorfer, Inc. v. United States*, 229 Ct.Cl. 560, 564–66 (1981); *Jennie-O Foods, Inc. v. United States*, 217 Ct.Cl. 314, 334, 580 F.2d 400, 412 (1978).

Plaintiff alleged in its complaint that absent mutuality of remedy, *i.e.* right of purchaser to collect liquidated damages if seller defaults, the liquidated damages provision violates public policy. However, plaintiff never alludes to this argument in his response to defendant's motion for summary judgment, nor has he brought to the attention of the court any case law which requires such mutuality of remedy. The court has been unable to locate any federal case which supports this argument.

 To the contrary, the Court of Claims upheld a liquidated damages provision in a case almost factually identical to this one. In *Higgs v. United States*, 212 Ct.Cl. 146, 546 F.2d 373 (1976), the plaintiff failed to purchase property after contracting to do so with HUD. In determining whether an almost identical liquidated damages provision was in reality a penalty, the Court of Claims focused on three factors. The court was not concerned with the concept of mutuality of remedy. These factors were as follows: 1) did the parties intend to provide for liquidated damages or a penalty; 2) would the anticipated damages from any breach be uncertain in amount and difficult to prove; and 3) does the amount of liquidated damages bear a fair and reasonable relationship to anticipated damages caused by the breach. 212 Ct.Cl. at 151–52, 546 F.2d at 377. In cases such as this, these factors, and not the concept of mutuality of remedy, continue to be utilized by this court as well as other federal courts in determining the viability of a liquidated damages assessment. *See JMNI, Inc. v. United States, supra*, 4 Cl.Ct. at 315. *See also* McBride and Wachtel, *Government Contracts*, § 34.10 (1984). The court concludes, based on the above cited case law, that mutuality of remedy is not necessary to enforce the liquidated damages provision in this case.[4]

---

4. Though there are several states which do not allow a purchaser to seek specific performance in a contract of sale which allows the seller to retain the purchaser's deposit if the purchaser fails to go through with the sale, based on a perceived lack of mutuality of remedy, the court is persuaded by the reasoning of those courts which find mutuality and permit specific per-

■ Both parties signed the contract in question which clearly and unambiguously provided that if the plaintiff failed or refused to perform promptly defendant could retain his earnest money deposit. The intendment of the parties is clearly one of liquidated damages and not one of penalty. If the other two factors cited above are present and the intent is clearly ascertainable from the writing, then the liquidated damages provision should be enforced. *Wise v. United States*, 249 U.S. 361, 365, 39 S.Ct. 303, 304, 63 L.Ed. 647 (1919). Thus, the proper focus for the court is on the uncertain nature of the potential damages resulting from a breach and the reasonableness of the liquidated damages. These factors should be judged as of the time that the contract was executed. *See Priebe & Sons, Inc. v. United States, supra*, 332 U.S. at 412, 68 S.Ct. at 126.

■ Clearly, at the time the contract at issue was executed, damages, which defendant could sustain if plaintiff failed to close the sale, were uncertain. HUD had no way of determining after a breach when it would be able to sell the property in question. Any delay beyond the closing date agreed upon would cost defendant money in that it would be without plaintiff's purchase money until the property was sold. Given the potentially volatile nature of real estate markets, HUD had no way of anticipating what purchase price it would receive when it attempted to sell the property after the breach. Potential administrative expenses of maintaining the buildings and setting up a new sale may also be considered. They can be particularly difficult to estimate. *Jeanie-O Foods, Inc. v. United States, supra*, 217 Ct.Cl. at 336, 580 F.2d at 413. The factually identical case of *Higgs v. United States, supra*, 212 Ct.Cl. at 152, 546 F.2d at 377, identifies several additional uncertainties in potential losses, and more importantly, it supports the court's finding that uncertainties exist in this case.[5]

■ The final factor is the one emphasized by plaintiff. He maintains that he can show, at a subsequent trial, that the liquidated damages amount has no basis in reality and is unreasonable.[6] Plaintiff admits in his brief that "[i]t is possible that in a sale of property for the amount of two hundred thousand dollars, that a refusal on the part of the purchaser to go through with the sale would result in a twenty thousand dollar loss." (Plf's Br. 10). With this the court agrees. Plaintiff's admission

---

formance. *See* Annot., 22 A.L.R.2d 508, 534–35 (1952). The latter cases further support the court's conclusion herein that the liquidated damages provision at issue in this case is enforceable.

5. The court notes that paragraph 7 of the contract at issue provides that: "Time is of the essence of this contract." One commentator has observed:

The greater the difficulty of ascertaining and computing in advance of a breach the probable actual damages, the more likely is it that the courts will sustain a provision for liquidated damages. Particularly is this the case when *time is the essence of the contract*, for it is usually very difficult or impracticable to reach a reasonable approximation of actual damages in that circumstance. [McBride and Wachtel, *Government Contracts*, § 34.10[1] (1984)].

6. Plaintiff implies in his brief that the fact that HUD utilizes a standardized 10 percent rate in such sales demonstrates that defendant was not attempting to anticipate losses, but was instead setting a standardized penalty. Such an assertion was addressed in *Young Assocs. Inc. v. United States*, 200 Ct.Cl. 438, 471 F.2d 618 (1973). The Court of Claims stated:

Citing the liquidated damages policy section of the Federal Procurement Regulations, 41 C.F.R. § 1–1.315–2(c) (1972), plaintiff says that the incorporation of FP–61 (promulgated in 1961 by the Commerce Department) into this Interior Department 1964 contract shows that no "case-by-case" consideration was given to the rate of liquidated damages. The answer is, we think, that the regulation does not require a liquidated-damage schedule to be tailor-made for each individual contract. It is enough if the amount stipulated is reasonable for the particular agreement at the time it is made. We have no reasons to doubt that that was so here, and plaintiff suggests none. [200 Ct.Cl. at 445, 471 F.2d at 621–22 (footnote omitted)].

The court believes such reasoning to be applicable in this case.

adds further support to the conclusion that the liquidated damages provision in this case is reasonable and otherwise proper.

Plaintiff, however, maintains that his breach in this case was simply the failure to close within the 30-day time limit. Plaintiff argues that such a breach could not reasonably be anticipated to result in defendant incurring damages of $20,000. Defendant in this case does not maintain that it would have retained plaintiff's earnest money deposit if he did not close until 31 days after the contract was executed. Defendant's position, instead, quite simply is that plaintiff never closed. Plaintiff failed to perform the contract. It was based upon plaintiff's complete failure to perform that defendant retained plaintiff's earnest money deposit.[7] Having concluded that liquidated damages are reasonable in this situation in which the purchaser completely failed to close the sale, the court finds defendant's retention of plaintiff's deposit proper. *See generally Higgs v. United States, supra.*

■ The law is clear that liquidated damages can be imposed even though, in fact, the damages sustained are less than those to which the parties stipulated. *See Priebe & Sons v. United States, supra,* 332 U.S. at 412, 68 S.Ct. at 126. Liquidated damage awards have been upheld in cases in which no actual damages were sustained. *Skip Kirchdorfer, Inc. v. United States, supra,* 229 Ct.Cl. at 567.[8] The court recognizes the above rules of law along with the rule of law that the reasonableness of a stipulated liquidated damages amount should be determined at the time a contract is executed. *See Priebe & Sons v. United States, supra,* 332 U.S. at 412, 68 S.Ct. at 126. However, the court finds that the actual damages sustained by defendant in this case corroborate the court's finding that the liquidated damages amount provided for in the contract of sale was reasonable.[9] Support for the court's consideration of actual damages to bolster its finding that the stipulated damages were reasonable can be found in *In re Oscar Nebel Co., Inc.,* 117 F.2d 326 (3d Cir.1941). In short, there is no triable issue of fact on plaintiff's unsupported assertion that the liquidated damages amount had no basis in reality.

■ The court finds another basis to reject plaintiff's allegation that an issue of material fact exists concerning the reasonableness of the liquidated damages amount. In this case defendant has filed a motion for summary judgment contending that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Plaintiff, in responding to defendant's motion, "feels that there are questions of material fact" in this case. (Plf's Br. 1a) Plaintiff alleges that the liquidated damages amount is unreasonable

---

7. Plaintiff's August 2, 1982, letter stated that he would have to "release the sale on that property because [his] source of finance had failed." Though this could not be considered a breach of paragraph 7 of the contract because the August 2, 1982, letter preceded plaintiff's 30-day deadline, the letter evidences that plaintiff was not going to perform. Said letter also cannot be construed as a request for an extension under paragraph 7 of the contract. Clearly, a purchaser interested in an extension, or in performing in a timely manner, does not express a willingness to pay damages, as plaintiff did in his August 2, 1982, letter.

8. Based on the rule of law that no actual damages need be sustained, and the fact that the liquidated damages amount stipulated to in this case was the limit of defendant's recovery if plaintiff failed to close, the court finds plaintiff's allegation that defendant failed to mitigate damages to be most unpersuasive, if not totally irrelevant.

9. Defendant submitted evidence of $11,204.64 in advertising costs incurred as a result of plaintiff's breach. The court recognizes that these advertisements included properties in addition to the properties plaintiff failed to purchase. However, said advertising costs are evidence of a portion of the costs associated with selling these properties. The cost to defendant of not receiving $180,000 from August 10, 1982 (original closing date) until September 16, 1983 (date project was actually sold) was not insignificant. The court also notes that there must have been significant administrative expenses associated with maintaining the buildings for the period preceding the actual sale.

and has no basis in reality.[10] He states: "It would be improper to dismiss this case at this point because the plaintiff should have an opportunity to prove his case." (Plf's Br. 4) Plaintiff maintains that there is a reasonable possibility that he will be able to produce evidence to support his allegations. (Plf's Br. 4). In support of his allegations, plaintiff submitted a single affidavit in which he confirmed that he was unable to acquire financing to purchase the property in question.[11]

It is well-established that "[i]n countering a motion for summary judgment, more is required than mere assertions of counsel." *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 626–27 (Fed.Cir.1984).

**10.** In support of his allegations, plaintiff cites several Michigan cases. Plaintiff maintains that, since the contract was entered into with defendant in the State of Michigan, Michigan law should be viewed as particularly applicable. However, the validity and construction of contracts to which the federal government is a party is controlled by federal law. *See United States v. Allegheny County,* 322 U.S. 174, 183, 64 S.Ct. 908, 913, 88 L.Ed. 1209 (1944); *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–75, 87 L.Ed.2d 838 (1943); *The Padbloc Co., Inc. v. United States,* 161 Ct.Cl. 369, 377 (1963). Therefore, the court need not consider such cases. The court notes, however, that it did review the Michigan cases cited by plaintiff and finds the holdings concerning liquidated damages to be generally consistent with the federal law on such damages.

**11.** Plaintiff's affidavit implies that defendant's representation on July 29, 1982, that plaintiff undoubtedly would have to forfeit his earnest money deposit if he failed to close within 30 days contributed to his inability to acquire the necessary financing. The court concludes that, even assuming that a HUD official made such a representation, plaintiff's assertion falls short of precluding the court from granting defendant's motion for summary judgment. There are several reasons why the court does not find plaintiff's allegations in his affidavit sufficient to raise a genuine issue of fact. First, both plaintiff's affidavit and the affidavit of Jean Nash, (Nash) the HUD Administrative Closing Officer who dealt with plaintiff, indicate that, at most, plaintiff was informed that if he did not purchase the property he would lose his earnest money deposit. Such a potential loss of his deposit was clearly set out in paragraph 7 of the contract.

Plaintiff informed Nash that he was unable to secure financing almost two weeks prior to the original scheduled closing date. It was at that time that Nash may have informed plaintiff that if he could not close the sale he could lose his deposit. It is uncontradicted that plaintiff never requested an extension of time to secure another source of financing. Contrary to plaintiff's assertion, his August 2, 1982, letter to Nash is not a request for a time extension. If anything, said letter was notice to Nash that plaintiff would not be able to close on the scheduled date.

Based on these facts, viewed in the light most favorable to plaintiff, the court cannot perceive how Nash's alleged restatement of the liquidated damages provision caused plaintiff to be unable to secure new financing. If plaintiff had requested an extension, his $20,000 deposit would not have been in jeopardy and the alleged reason for his inability to secure financing would not have been present. Therefore, the court concludes that defendant cannot be found to be responsible in any way for plaintiff's inability to secure financing. *See Prestex, Inc. v. United States,* 3 Cl.Ct. 373, 382 (1983). The court fails to see any realistic possibility that a trial, preceded by discovery, would, or even might, establish facts which would aid plaintiff. In the court's view, any such trial here would waste the resources of the parties and the court. *See Frangella Mushroom Farms, Inc. v. United States,* 229 Ct.Cl. 578, 583 (1981).

Additionally, plaintiff submitted no affidavits or other evidence to support his implications or inferences that any of defendant's activities resulted in plaintiff's inability to secure financing. Defendant's motion for summary judgment should not be denied based on such naked implications or inferences. *See Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 627 (1984); *Singleton v. United States,* 6 Cl.Ct. 156, 168 (1984).

In *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* the Federal Circuit Court of Appeals stated:

> The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed. Cir.1984). A non-movant runs the risk of a grant of summary judgment by failing to disclose the evidentiary basis for its claim. 6 Moore's Federal Practice § 56.-15[3], at 56–483 (2d ed. 1983). [739 F.2d at 627]

In this case plaintiff has offered no evidence by way of affidavits or otherwise which would support his position that the damages stipulated to at the execution of the contract were unreasonable. Plaintiff has merely asserted that the liquidated damages amount has no basis in reality and that he should be given an opportunity to prove his allegations. However, "[m]ere conclusory assertions do not raise a *genuine* issue of fact." *Pure Gold, Inc. v. Syntex (U.S.A.), Inc., supra,* 739 F.2d at 627. (Emphasis supplied.) This court has stated:

> Summary judgment should not be denied on the mere assertions of counsel or conclusionary pleading that genuine issues of fact exist, which is the case here, nor should such a motion be denied merely to satisfy a litigant's speculative hope of finding some evidence that might serve to save her [his] complaint from dismissal. [*Singleton v. United States,* 6 Cl.Ct. 156, 168 (1984) (citing *Pure Gold, Inc. v. Syntex (U.S.A.), Inc., supra,* 739 F.2d at 636, 627)].

The court concludes that such reasoning is directly applicable to this case and that plaintiff has failed to present sufficient evidence through affidavits or other documentation to support his claim and prevent its dismissal.[12]

### III.

Based on the above reasoning, the court concludes that no genuine issue of fact exists and that defendant is entitled to a judgment as a matter of law. Therefore, defendant's motion for summary judgment is granted with plaintiff's complaint to be dismissed.

12. The above conclusion concerning plaintiff's failure to support his allegations with affidavits or otherwise is also applicable to his claim that the liquidated damages provision in this case was against public policy because of the lack of mutuality of remedy. Plaintiff made such a bare allegation in his complaint and subsequently failed to support it with any evidence or legal arguments.