**P & D CONTRACTORS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90-798C.**

United States Claims Court.

Feb. 24, 1992.

David C. Hawkins, Boston, Mass., for plaintiff.

Anthony J. Ciccone, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on the parties' cross-motions for summary judgment on plaintiff's claim for the balance of the contract price under a firm-fixed price construction contract. For the reasons set forth below, the court grants defendant's cross-motion for summary judgment and denies plaintiff's cross-motion.

## FACTS

On July 13, 1988, P & D Contractors, Inc. entered into a firm-fixed price construction contract with the Department of the Navy for "Additions to Enlisted Club, Building 112, Naval Air Station, South Weymouth, Massachusetts." The contract required P & D to remove an existing outdoor dining area, located adjacent to the Enlisted Men's club at the South Weymouth Naval Air Station, and to replace it with a recreation room and necessary electric, heating, and cooling components. The contract price was $140,998, and the date of completion was set for March 27, 1989. P & D did not complete work until September 13, 1989, 170 days after the contract completion date.

The contract provided for liquidated damages, as follows in pertinent part:

> Liquidated Damages: If the Contractor fails to complete the work within the time specified in the contract, or any extension, the contractor shall pay to the Government as liquidated damages, the sum of $100 for each day of delay.

Specifications, sec. 01010, page 01010–3, par. 5. Defendant calculated 170 days of delay, and withheld $17,000 in liquidated damages. Defendant also withheld $5,000 from P & D for its failure to provide the defendant with the following: (1) payroll data for a subcontractor, American Heating; (2) operation and maintenance (O & M) manuals for the mechanical heating and cooling (HVAC) system; and (3) testing of the HVAC system and testing and balancing (T & B) reports for the HVAC system. All of the preceding were required

under the contract.[1] Defendant based the withholding on paragraph 32 of the contract's general provisions and Section 01011, paragraph 9(b) of the contract. Paragraph 32 of the general provisions stated in pertinent part:

(c) ... When the work is substantially complete, the Contracting Officer may retain from previously withheld funds and future progress payments that amount the Contracting Officer considers adequate for the protection of the Government and shall release to the Contractor all the remaining amount.

Section 01011, paragraph 9(b) of the specifications provided:

The obligation of the Government to make any of the payments required under ... this contract shall, in the discretion of the OICC [officer in charge of construction], be subject to: (1) reasonable deductions on account of defects ..., and (2) any claims which the Government may have against the Contractor under or in connection with this contract.

On April 19, 1990, P & D submitted a claim to the contracting officer, pursuant to the Contract Disputes Act (CDA) of 1978, 41 U.S.C. § 601, *et seq.* P & D sought to recover the $17,000 withheld as liquidated damages for the 170–day delay, and the $5,000 withheld by the Navy for the missing manuals, tests, reports and payrolls. The contracting officer issued a final decision denying P & D's claim on August 22, 1990.

In its motion before this court, P & D did not deny that it executed a contract which expressly provided for liquidated damages or the Navy's concomitant right to withhold payment from P & D. Nor did P & D dispute that construction was not completed until 170 days after the contract deadline. P & D's arguments focused on the validity of the liquidated damages clause and the reasonableness of the damages assessed under the liquidated damages and withholding clauses. As these are contentions of law, and there are no genuine issues of material fact, the court agrees with the parities that the case is ripe for disposition by summary judgment.

## DISCUSSION

■ Summary judgment is appropriate when there is "no genuine issue as to any material fact" so that the moving party "is entitled to judgment as a matter of law." RUSCC 56(c) (1991). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Chevron U.S.A., et al. v. United States*, 17 Cl.Ct. 537, 540 (1989), *rev'd on other grounds*, 923 F.2d 830 (Fed.Cir.1991). In order to show that a material fact is genuinely at issue, the non-movant must do more than present "some" evidence on the disputed issue. *Liberty Lobby, Inc.*, 477 U.S. at 248–50, 106 S.Ct. at 2510–11. As the Supreme Court stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a [court] to return a verdict for that party. If the evidence [of the non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted); *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), which held that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" P & D must do more than merely raise some doubt as to the existence of a fact; it must furnish some credible evidence suffi-

---

1. Paragraph 4 of the contract's "Labor Standard Provisions" required that "the contractor shall submit weekly ... a copy of all payrolls to the Contracting Officer."

Section 15011 of the contract's specifications required P & D to "[f]urnish an operation and maintenance manual for each item of equipment," specifying in detail the information to be furnished.

Section 01661 of the specifications required "tests to demonstrate that ... air and water systems comply with contract requirements," as well as the submission of reports "certified by an independent Registered Professional Engineer."

cient to require trial on the merits. *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

## I. *The Liquidated Damages Claim*

■ P & D argued that the liquidated damages provision was unenforceable because it was not based on a reasonable estimate of the type of damages defendant might suffer from late completion of the project. In response, defendant maintained that the liquidated damages were reasonable because they were based on figures from Navy Contracting Manual NAVFAC P–68, recently held by this court to provide a reasonable basis for fixing liquidated damages in government contracts. *Fred A. Arnold, Inc. v. United States*, 18 Cl.Ct. 1 (1989).

■ Liquidated damages clauses are valid when they serve as "fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract," and not merely as an "added spur to performance." *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 413, 68 S.Ct. 123, 126–27, 92 L.Ed. 32 (1947). P & D argued that *Arnold* addressed liquidated damages in a contract for the construction of military housing and the circumstances here, for an addition to an enlisted men's club, were different enough to warrant lesser liquidated damages. P & D argued that the *Arnold* holding should be confined to contracts for military housing only because the liquidated damages fixed in NAVFAC P–68 were specified for military housing, and damages were based on estimates of anticipated losses unique to delays in completing military housing contracts. By contrast, there are no figures specifically for enlisted men's clubs. Work on an enlisted men's club falls within the category of "General Construction Projects," for which NAVFAC P–68 provides no basis for proposed liquidated damages. Defendant asserted the *Arnold* holding is broad enough to apply the liquidated damages fixed in NAVFAC P–68 to general construction projects. The court finds that the difference between military housing projects and general construction

projects is of no moment. In *Arnold*, this court stated:

> to hold that the regulation was unreasonable, or in need of substantiation by independent proof, is tantamount to requiring the Government to 'reinvent the wheel' each time it enters into a contract for the construction of military housing that is to include a liquidated damages provision ... We must presume, therefore, that this regulation, like federal regulations in general, is reasonable, absent evidence to the contrary.

*Arnold* at 13. *Arnold* did not require the Navy to provide the basis for the military housing liquidated damages that as presently mandated in NAVFAC P–68. Likewise, the Navy here need not provide the basis for General Construction Project liquidated damages. Consequently, in the absence of any evidence from P & D to the contrary, the liquidated damages provision in this case, and the liquidated damages set out in NAVFAC P–68 on which it is based, are reasonable.

■ Even if the court were to confine the *Arnold* holding to liquidated damages provisions for military housing contracts, it would find the provisions in this case enforceable. In *Cegers v. United States*, 7 Cl.Ct. 615, 618 (1985), this court applied a three-part test in determining the enforceability of a liquidated damages provision. Under *Cegers*, it first must be clear that the parties intended to provide for liquidated damages. *Id.* at 618. Here, the contract included a liquidated damages clause, to which P & D professed neither ignorance nor objection. In the second part of the *Cegers* test, the anticipated damages from the delay must be uncertain in amount or difficult to prove. Here, P & D was required to complete construction of the enlisted men's club by March 27, 1989. As P & D concedes, work was not completed until September 13, 1989, 170 days later. Clearly, at the time the parties executed the contract, there was no way to estimate, with reasonable accuracy, the value of a 170 day delay in performance. This was due to the difficulty in quantifying the inconveniences which would arise from delay. Of the foreseeable, though unquanti-

fiable, inconveniences in this case, defendant listed: (1) loss of business caused by the delayed opening of the new facility; (2) decreased business at the existing enlisted men's club due to prolonged adjacent construction; and (3) increased overhead and administration expenses associated, for example, with the Navy's need to monitor the project, and respond to the deficiencies, over a longer period than anticipated. Because these inconveniences were uncertain in amount and difficult to prove at contract formation, the second requirement to the *Cegers* test is also met. The third requirement of *Cegers* is that the amount of liquidated damages must bear a fair and reasonable relationship to anticipated damages caused by the delay. Reasonableness, however, is to be determined at the time of execution. *Id.* at 620, citing *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32 (1947). P & D failed to argue the reasonableness of the liquidated damages at the time it executed the contract. Therefore, P & D is foreclosed from doing so now. Further, even if the amount of liquidated damages might, with hindsight, be greater than the actual damages incurred, that does not make the amount of liquidated damages *per se* unreasonable. The court finds that the liquidated damages provision in this case meets the reasonableness requirement of *Cegers* and, consequently, the provision was enforceable.

■ Notwithstanding the validity of the liquidated damages clause, P & D nevertheless argued that it was entitled to recover because defendant failed to provide proper evidentiary support for the liquidated damages assessed. According to P & D, it was insufficient that the Navy merely mentioned the anticipated damages on which it estimated liquidated damages, without supporting affidavits. P & D based this argument on a very narrow reading of RUSCC 56. Specifically, P & D focused on Rule 56(c) which, taken by itself, would seem to limit the court to consideration of pleadings, depositions, answers to interrogatories, and admissions on file in summary judgment proceedings. However, Rule 56(d), which requires parties to file their "proposed findings of uncontroverted fact," demonstrates that the types of evidentiary support available for summary judgment proceedings are not limited to the kinds listed in Rule 56(c).

Rule 56(d) allows for documentary evidence in the form of "affidavits or exhibits," in summary judgment proceedings. RUSCC 56(d)(1). Further, the United States Court of Appeals for the Federal Circuit has held that a court may consider evidence which is not supported by affidavit; evidentiary matters outside the pleadings may be considered, *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986). Therefore, the court may consider defendant's exhibits regardless of the absence of supporting affidavits.

## II. *The Additional Withholding Claim*

■ P & D did not dispute its failure to provide the payroll data and technical information, or the validity of the withholding provisions. Rather, P & D challenged defendant's exercise of its withholding authority as improper and excessive. This Court has stated:

> As a matter of law, the government has a right to withhold contract amounts due a contractor for satisfaction of a claim, liquidated or unliquidated, which the government has against the contractor until the damage is determined by way of a contracting officer's decision.

*Cord Moving & Storage Co. v. United States*, 17 Cl.Ct. 741 (1989); *citing Project Map, Inc. v. United States*, 203 Ct.Cl. 52, 54–55, 486 F.2d 1375, 1376–77 (1973); *Dale Ingram, Inc. v. United States*, 201 Ct.Cl. 56, 76–77, 475 F.2d 1177, 1188 (1973). Defendant withheld $5,000 to satisfy claims for items and services P & D failed to supply. These items and services were clearly required by the contract and P & D has admittedly failed to provide them to defendant. It is clear that defendant has the requisite authority to withhold an amount from payment, under *Cord*, to satisfy its claims against a contractor.

P & D challenged defendant's withholding by arguing that although it was contractually required to provide defendant with payroll data, there was no need for the payroll data. P & D based its argument on the fact that a Department of Labor (DOL) investigation of American Heating (the subcontractor for whom payroll data were not submitted) uncovered no outstanding wage claims for which defendant would have needed to withhold payment. Defendant therefore did not need the payroll data to calculate the amount it would have had to withhold to satisfy outstanding wage claims. Defendant disagreed, maintaining that it was not clear from the DOL investigation that American Heating actually paid its laborers the outstanding wage claims, or that DOL investigated the entire period for which defendant noted absent payroll data. Defendant was justified in insisting on P & D's submission of the payroll data to avoid such uncertainty. Indeed, the requirement to submit payroll data was inserted in the contract to prevent such uncertainty from arising.

█ The only remaining issue P & D raised was the amount withheld for the missing payroll data. According to FAR 52.232–5, Payments under Fixed–Price Construction Contracts, incorporated into paragraph 32 of the contract's general provisions, the contracting officer may retain that amount that he considers "adequate for the protection of the Government." Under § 01011, par. 9(b), the amount withheld must be based on an actual claim of the Government against the contractor. As established above, defendant has an actual claim against P & D for its failure to provide the government with the payroll data. The amount withheld was based on defendant's reasonable estimates of what it would cost to pay outstanding wage claims.

P & D did not effectively challenge the HVAC and O & M claims and it presented no credible, probative evidence that the amount assessed by the contracting officer was improper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The amount withheld was also based on defen-

dant's reasonable estimates of the costs to provide O & M manuals and test the HVAC system and provide T & B reports. The court finds that the amount withheld provided adequate, but not excessive, protection for the Government in the event that P & D ultimately fails to provide these items.

P & D argued that regardless of the validity of defendant's withholding, it nevertheless was entitled to recover because defendant failed to provide proper evidentiary support for its withholding of payments. Specifically, P & D contended that the court cannot consider defendant's reasons for withholding the payments because the reasons are unsupported by affidavits or otherwise authenticated. The court is not persuaded by this argument, however, for the same reasons that it finds the argument baseless with regard to the liquidated damages claim. P & D's argument was based on an unduly restrictive reading of RUSCC 56, which permits consideration of evidence in the form of "affidavits or exhibits," in summary judgment proceedings. RUSCC 56(d)(1). Therefore, the court may consider defendant's exhibits regardless of the presence of supporting affidavits for the payments withheld. *See Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed.Cir. 1988). P & D knew full well of its obligations under the contract and cannot cry foul for failing to meet its obligations. The court does note that the Navy has not yet terminated the contract, undertaken a reprocurement to obtain the missing items, or make claim against P & D to recoup the costs of alternate performance, although it reserves the right to do so in the future. Indeed, in the event that the Navy exercises any of these options, it could hold P & D liable for an amount even greater than the $5,000 currently being withheld. Until such time, however, P & D need only provide the missing items and services to obtain the withheld payment.

## CONCLUSION

Based upon careful consideration of the record, and after giving the proper deferences required under the law of summary

judgment the court concludes that defendant's motion for summary judgment should be granted because: (1) there are no genuine issues of material fact; (2) the liquidated damages provision at issue was based on a reasonable estimate of anticipated damages per NAVFAC P–68; (3) the liquidated damages provision was enforceable under the *Cegers* three-part test; (4) defendant was permitted to withhold payment for items and services P & D failed to provide under the terms of the contract; and (5) the amount of payment withheld by defendant was both reasonable and supported by the evidence. Defendant's cross-motion for summary judgment is allowed and P & D's cross-motion is denied. The Clerk is directed to dismiss the complaint with prejudice. Costs to defendant.

IT IS SO ORDERED.